OPINION
Defendant-Appellant Marcella Wolfe ("Marcella") appeals judgment of the trial court finding her in contempt and ordering her to pay $500 in attorney fees. The parties have been in Greene County Juvenile Court numerous times, arguing over custody, visitation, child support, health insurance and all related issues regarding their daughter, Kaitlyn. As a matter of fact, both the magistrate and the judge have admonished the parties to learn how to work together to resolve issues without disparaging each other, particularly in front of their daughter. The present appeal derives from a judgment following a hearing in front of Judge Hutcheson wherein he addressed several issues that remained pending in the court.
On June 15, 1999, Plaintiff-Appellee Thomas Skowronek ("Tom"), filed a motion to show cause why Marcella should not be held in contempt for denying visitation on several occasions and taking actions to alienate Kaitlyn from her father. In his motion, he also requested attorney fees for filing the contempt action. In September of 1999, the magistrate held a hearing and issued a decision in which he specifically reserved ruling on the motion for contempt until after a February 10, 2000 hearing. However, the magistrate did award additional visitation to Tom in this September decision to make up for two weekends of denied visitation.
Following the February hearing, the magistrate issued a decision which did not address the contempt motion. Similarly, another hearing was held in April during which the contempt motion was not addressed.
Finally, on June 13, 2000, Judge Hutcheson held a hearing which he stated at the outset involved health insurance, spring break visitation and child support. During this hearing, Tom's counsel reminded the court that the issue of contempt and attorney fees pursuant thereto had not been addressed to date. Although an objection was raised by Marcella's counsel, the court agreed that the record did not reflect that the contempt motion had been resolved.
Testimony at this hearing revealed that Marcella had denied Tom's visitation on several occasions, claiming that she misunderstood the visitation order or made a mistake. Marcella alleged at the hearing that all denied visitation had been made up by order of the magistrate. Further, there was a great deal of testimony involving Marcella's failure to cooperate and foster a relationship between Kaitlyn and her father. For example, Marcella would not require Kaitlyn to speak to her father when he phoned, argue with Tom over visitation issues during pick up and drop off times, return Tom's mail unopened, and there was at least one occasion where she hung up the phone when he asked to speak to her regarding visitation schedules.
After hearing this testimony, the court issued a decision in which it found Marcella in contempt for denying visitation. Although the court did not actually issue a sanction for the contempt, it did order her to pay $500 in Tom's attorney fees. Marcella appeals this judgment raising the following assignments of error:
 The Court materially erred and abused its discretion when it found Marcella Wolfe to be in contempt of Court for visitation because Defendant was already cooperative with rescheduling visitation, visitation had been made up, and the only purpose for the contempt citation was to punish the Defendant-Appellant for conduct which had already been remedied and compensated to the Plaintiff and not for procuring prospective future compliance with a Court Order.
 The Court materially erred and abused its discretion in finding the Defendant in contempt of Court for failure to provide third weekend visitation on September 18-20 and December 18-20, 1998 for the reason that the Agreed Order on visitation the parties entered into specified that holiday and summer vacation visitations would be inclusive of any weekend visitation during that time meaning there would be no monthly third weekend visitation for months where they were taken.
 The Court materially erred and abused its discretion when it found Defendant-Appellant in contempt of Court on visitation for the reason that the Defendant's conduct did not rise to the level of a contempt or disregard for Orders of the Court, but rather rose out of a simple mistake.
 The Court materially erred, abused its discretion, and violated Appellant's Constitutional Rights when it heard testimony and entertained the issue of contempt on visitation and attorney fees without providing proper notice to the Defendant-Appellant in advance of the hearing.
 The Court materially erred and found against the manifest weight of the evidence and did not have evidence meeting the requisite burden of clear and convincing proof when it found Defendant-Appellant in contempt of Court for visitation.
 The Court materially erred and abused its discretion when it awarded Plaintiff-Appellee attorney fees and when it admitted testimony on re-direct going to Plaintiff-Appellee's attorney fees, over objection, after cross-examination which did not discuss the issue.
 The Court materially erred and abused its discretion when it awarded make-up visitation for alleged contempt when such visitation had already been made up.
 I
Assignments of error one, two, three, five and seven all challenge the soundness of the trial court's finding of contempt, so we will address them together.
In the present case, the trial court did not indicate in its decision whether Marcella's contempt was civil or criminal. We must examine the character and purpose of the contempt finding in order to make this determination. In re Davis (1991), 77 Ohio App.3d 257, 268. In criminal contempt, the punishment is to vindicate the authority of the court and to punish acts of disobedience. Id. On the other hand, civil contempt is for the benefit of the complainant and is remedial in nature. Id. A sanction for civil contempt may be either: "(1) remedial or compensatory in the form of a fine to compensate the complainant for the contemnor's past disobedience; or (2) coercive and prospective, i.e., designed to aid the complainant by bringing the defendant into compliance with the order, and conditional, wherein confinement may be terminated by the contemnor's adherence to the court's order." ConTex,Inc. v. Consolidated Technologies, Inc. (1988), 40 Ohio App.3d 94, 96, citing Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253-54.
Because the court only ordered Marcella to pay Tom's attorney fees, and did not issue any other sanction, we do not view this as punishment to vindicate the court's authority. Instead, the award of attorney fees is clearly for the benefit of the complainant, Tom. Therefore, we conclude that the contempt finding in this case is civil.
Initially, we recognize that "[p]roof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of [civil] contempt." Pugh v. Pugh (1984), 15 Ohio St.3d 136, paragraph one of the syllabus. A contempt sanction can result regardless of whether the offending party intended to violate the court order. Pedonev. Pedone (1983), 11 Ohio App.3d 164, paragraph two of the syllabus. Still, a finding of civil contempt must be supported by clear and convincing evidence. Brown, supra, at 253. In reviewing such a finding, we will not reverse the trial court's decision absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11. Because the purpose of contempt focuses on the court's authority and proper functioning, great emphasis must be placed on this discretion.Denovchek v. Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16. As a result, we will not reverse the trial court's decision if it is based on competent and credible evidence that Marcella violated the court order regarding visitation.
The trial court stated in its decision that it found Marcella in contempt because she denied Tom visitation with Kaitlyn. After reviewing the record, we find that there is competent and credible evidence that this did occur on more than one occasion. Tom testified that he was denied his third weekend of the month visitation with Kaitlyn on September 18-20 and December 18-20 of 1998, spring break visitation from March 26-28 and Memorial Day weekend in 1999. Marcella agreed that she did not allow visitation during these times, but explained that she misunderstood the visitation order or just made a mistake. This admission alone constitutes sufficient evidence for the trial court to find Marcella in contempt, as she essentially admitted that she violated a court order, regardless of whether it was a mistake.
As for the first two missed visitations, she thought that because Tom had extended vacations in those months, that the vacations would incorporate his weekend, even though the vacation was not during the same time period as the third weekend visitation. The "visitation order" was actually an agreement read into the record at an August 6, 1998 hearing. After describing Tom's extended holiday and summer visitation, the attorney stated:
 Such visitations would be inclusive of any weekend visitation, which would mean that during the two week period, for that two week period, there would be no weekend visitation. The mother would have at least two phone contacts any time the child is visiting with the father for one week or more * * *.
 (Emphasis added.) We interpret this portion of the visitation order to say that Marcella would not enjoy visitation with Kaitlyn during Tom's two-week vacations. One of Tom's two-week summer vacations ended the first week of September, and he also had scheduled vacation over the Christmas holiday. Because of these extended vacations, Marcella felt he was not entitled to his third weekend in those months.
Although it is possible that Marcella misconstrued the language of the visitation agreement, this would be a credibility issue which is best resolved by the trial court. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418. An appellate court should not reverse the decision of a lower court based on conflicting opinions involving witness credibility because the trial court is in the best position to observe the witnesses' voice inflections and gestures as they testify, and use this knowledge to assess their credibility. Id. at 419. This is particularly true when the case involves such personal issues as custody and visitation, because "there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Id.
For one of the other missed visitations, Tom drove an hour and a half to Chillicothe where Marcella and Kaitlyn reside, only to find that they were not home. Again, Marcella testified that she misunderstood the order or "made a mistake." In addition, there was a great deal of testimony that Marcella engaged in activity that frustrated the parental relationship and visitation schedules.
Based on all of this information, we find that the trial court did not abuse its discretion in finding Marcella in contempt.
Marcella also contends that the trial court should not have awarded make-up visitation because the visitation had already been made up by prior order of the magistrate. Although we agree that it appears from the record some of the denied visitation had been made up, it is not clear that all of it was. In any event, a trial court has broad discretion in awarding visitation, which will not be disturbed absent an abuse of this discretion. Bawidamann v. Bawidamann (1989), 63 Ohio App.3d 691, 695, citing Trickey v. Trickey (1952), 158 Ohio St. 9, 14. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. As noted earlier, we reviewed considerable testimony regarding the lack of harmony between the parties and Marcella's unwillingness to foster a relationship between Tom and Kaitlyn. Combining this testimony with the denied visitation, we do not find the trial court's decision to award make-up visitation was arbitrary or capricious.
Based on the foregoing, Marcella's first, second, third, fifth and seventh assignments of error are overruled.
 IV
Marcella's fourth assignment of error alleges that the trial court violated her constitutional right of due process by failing to give notice that the motion for contempt would be addressed at the June 13, 2000 hearing. In this regard, "[d]ue process requires that persons whose property interests are jeopardized by the filing of legal proceedings be given notice reasonably calculated, under all the circumstances, to apprise those persons of the pendency of the action and afford them an opportunity to present their objections." Galt Alloys, Inc. v. KeyBankNatl. Assn. (1999), 85 Ohio St.3d 353, paragraph one of the syllabus. Such due process must be observed in civil contempt actions. Turner v.Turner (May 18, 1999), Franklin App. No. 98 AP-999, unreported, at p. 3. However, "procedural due process is a fluid concept, to be evaluated on a case-by-case basis, taking into consideration the interest at stake and the possible deprivation of that interest." First Bank of Marietta v.Mascrete, Inc. (1998), 125 Ohio App.3d 257, 268.
Marcella does not dispute that she received notice of the motion for contempt and a show cause order soon after they were filed in June of 1999. She also does not dispute that the magistrate discussed the motion at the September 1999 hearing. However, she erroneously believed that the magistrate resolved the contempt issue at that hearing. Instead, the magistrate advised the parties that he would reserve ruling on the issue until after the February hearing. This reservation of ruling was reiterated in the magistrate's decision following the September hearing where he unambiguously stated that the issue of contempt would be subject to review at a February hearing. At the same time the magistrate declined to rule on the contempt motion in the September decision, he awarded make-up time for the denied visitation that formed a partial basis for the contempt motion. Therefore, the parties should have known that the contempt motion had not yet been ruled on following the September hearing. See First Bank of Marietta, supra, at 269.
The February and April hearings passed without any mention of the contempt motion. Finally, in an entry dated May 5, 2000, the trial court stated that health insurance "and other issues shall be heard on 13th day of June, 2000, at 2:00 p.m. Copies of this Entry shall serve as a Notice to all said parties." Because Marcella was given sufficient notice that the motion for contempt was filed and both parties should have been aware that the motion was still pending as it had not yet been addressed, this entry was sufficient notice that the issue of contempt could be addressed at the June 13, 2000 hearing.
In addition, although Marcella objected to the consideration of the contempt motion at the June 13 hearing, there was no evidence as to how she was prejudiced by her "lack of notice." See Turner, supra, at p. 4. The contempt motion simply alleged that Marcella had denied visitation and took action to aggravate the relationship between Tom and Kaitlyn. All of these issues were addressed at the hearing by both parties. There was no argument that other witnesses needed to be called or other evidence presented in order to defend against the motion for contempt.
Because Marcella had proper notice that the contempt motion was still pending, and was not prejudiced by its consideration at the June hearing, we find that there was no violation of her procedural due process rights. Accordingly, Marcella's fourth assignment of error is overruled.
 VI
In her sixth assignment of error, Marcella argues that the trial court abused its discretion in ordering her to pay $500 in attorney fees to Tom. More specifically, she challenges the trial court's admission of testimony about the amount of attorney fees on redirect examination when it had not been addressed on cross.
Generally, redirect examination is limited to issues explored by the opposing party on cross-examination. State v. Zimmerman (Sept. 1, 2000), Lucas App. Nos. L-98-1246, CR-019970354, unreported, at p. 2, citingHoltz v. Dick (1884), 42 Ohio St. 23, paragraph seven of the syllabus andMicham v. Micham (Sept. 30, 1998), Lucas App. No. L-97-1308, unreported. "However, the ultimate limits of inquiry on redirect examination are left to the sound discretion of the trial court." Id. This discretion is abused if the trial court's actions are "grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion, or extreme bias." Micham, supra, quoting Deans v.Allegheny Internatl. (USA) Inc. (1990), 69 Ohio App.3d 349, 352.
Although we agree with Marcella that the issue of attorney fees was not addressed on cross examination, we do not find the trial court abused its discretion in allowing the testimony. The court had agreed earlier in the hearing that the issues of contempt and attorney fees should be resolved at this hearing. If the court felt that it needed to hear this testimony in order to resolve these issues, we do not find that the decision to allow it demonstrated a perversity of will, defiance of judgment, undue passion or extreme bias.
Furthermore, we do not find the trial court erred in awarding attorney fees in this case. It is well settled that a trial court has the discretion to award attorney fees as costs against an individual found guilty of civil contempt. Planned Parenthood v. Project Jericho
(1990), 52 Ohio St.3d 56, 67. Similar to the finding of contempt itself, there is no requirement that the contempt was willful or intentional for an award of attorney fees to be appropriate. DaytonWomen's Health Ctr., Inc. v. Enix (1993), 86 Ohio App.3d 777, 783. Because we did not find any error in the trial court's finding of contempt, we likewise find no error in its award of attorney fees. Accordingly, Marcella's sixth assignment of error is overruled.
GRADY, J., and YOUNG, J., concur.
 _________________ Brogan, J.,