OPINION
Appellant L. Patrick Mulligan, an attorney, appeals from an order finding him in contempt for violating Loc.R. 4.09(G) of the Court of Common Pleas of Montgomery County, Domestic Relations Division. Mulligan contends that the trial court erred by, among other things, finding him in contempt without first conducting a hearing in violation of the Due Process clauses of the United States and Ohio Constitutions. We agree. Therefore, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
Mr. and Mrs. Pirtle were divorced in 1998. Mrs. Pirtle was named residential parent of the parties' three minor children. In 1999, Mr. Pirtle filed a motion requesting a change in the parties' parental rights and responsibilities. In March, 2000, the parties settled the case, and an agreed order was issued naming Mr. Pirtle the residential parent and sole legal custodian of the parties' children, and granting Mrs. Pirtle visitation. The order also mandated that the children's step-brother not be permitted to spend the night during the children's overnight visits with Mrs. Pirtle. The order further scheduled a hearing for September 19, 2000, to review the matter of child support and the children's adaptation to the revised shared parenting plan.
At the September 19th review hearing, Mr. Pirtle requested, among other things, that the trial court prohibit Mrs. Pirtle from taking the children to Maryland for their step-brother's wedding on the weekend of October 20, 2000. On October 5, 2000, the magistrate issued a decision and permanent order, finding that Mr. Pirtle had "presented no evidence to the court that [Mrs. Pirtle] has acted irresponsibly with the children[,]" and ordering that Mrs. Pirtle "be permitted to take the children to Maryland the weekend of October 20, 2000." However, the magistrate ordered Mrs. Pirtle to keep her promises not to permit the children's step-brother to stay with her and her children in their motel room, and to supervise the children at all times.
On October 18, 2000, Mr. Pirtle's attorney, L. Patrick Mulligan, filed objections to the magistrate's October 5th decision, challenging the portion of the magistrate's order allowing Mrs. Pirtle to take the children to their step-brother's wedding. On that same day, the chief deputy of the clerk of courts sent the trial judge a letter stating as follows:
 Today, attorney Patrick Mulligan insisted that we file stamp an objection to a Magistrates [sic] decision that had memorandum and prior decisions attached. Linda Lee informed Mr. Mulligan that his pleading violated local rules 4.09 and 4.54 of the DR [domestic relations] court. Mr. Mulligan stated he didn't care about the local rules and insisted we file the document with the attachments. Ms. Lee called me and I met with Mr. Mulligan at the DR counter. Mr. Mulligan reiterated that he didn't "give a crap" about the local rule and that I could inform the Court of that fact. That is in fact exactly what I am doing.
 This is a pattern of conduct by Mr. Mulligan and he has been nothing if not consistent about his disdain for the local rules. The Clerk of Court [sic] has done what we agreed to do. We informed Mr. Mulligan that he was violating the local rule and accepted the document for filing with the notation that the attorney insisted it be filed in violation of the Courts [sic] rule.
On October 19, 2000, Mrs. Pirtle filed a request for an emergency interim order prohibiting Mr. Pirtle from preventing her from taking the children to their step-brother's wedding in Maryland. On October 20, 2000, the trial court issued an interim order, prohibiting Mr. Pirtle from interfering, directly or indirectly, with Mrs. Pirtle's visitation with the children on the weekend of October 20-22, 2000, and authorizing Mrs. Pirtle to take the children to Maryland during that weekend.
On October 25, 2000, the trial court issued a judgment entry ordering among other things, that the exhibits attached to the objections filed by Mulligan on Mr. Pirtle's behalf be stricken and "physically remove[d]" from the court's file, and returned to Mulligan, at Mr. Pirtle's costs. The trial court also ordered Mulligan to show cause in writing why he should not be held in contempt for violating Loc.R. 4.09(G) of the Court of Common Pleas of Montgomery, Domestic Relations Division.
November 1, 2000, Mulligan filed on Mr. Pirtle's behalf a motion to withdraw his October 18th objections to the magistrate's decision and order, informing the trial court that Mrs. Pirtle had never purchased airline tickets for her children to take them to their step-brother's wedding in Maryland, and that, therefore, the objections were moot. On that same day, Mulligan filed a response to the trial court's show cause order, stating his reasons for attaching exhibits to his objections, as follows:
B. MOTIVATION
 Undersigned counsel was aware just prior to the weekend of October 20, 2000 that this Court has ruled that the children were going to be allowed to be in the presence of one convicted child molester and two known child molesters.
 The goal was to make this Court instantly (emphasis, sic) aware of the order of the Magistrate and the history of the molesters reference (sic) to the children in this case. Undersigned counsel also has 16 years of experience doing divorce work. Countless times undersigned counsel has appeared at hearings before magistrates in this court and have been told by the magistrates the entire file or part of the file was not delivered to them because of an error, misfeasance, malfeasance, or some omission by the Clerk of Courts.
 Undersigned counsel's motivation was to instantly (emphasis, sic) have the Court's prior order in front of the Judge who had to rule on the issue. In other words, undersigned counsel was attempting to do the Court a favor. Undersigned counsel also wanted to be complete as the issue was of the utmost importance to the client.
On November 30, 2000, the trial court issued a final entry regarding the contempt issue. First, the trial court ordered stricken from the record the section of Mulligan's response to the show cause order entitled, "B. MOTIVATION," finding that it "contains scandalous and unsubstantiated allegations against this court and other persons who may have been the subject of the magistrate' proceedings herein." Additionally, the trial court noted that while Mulligan disputed the "legal" accuracy of the letter sent to the trial court by the Chief Deputy Clerk of Courts, he did not dispute its "factual" accuracy. The trial court stated:
 [t]he court expects more professional demeanor to its employees and those of the Clerk of Courts. Legal disputes may always be brought to the attention of the court, but are no excuse for verbally abusing clerk of court personnel or demanding that they violate court rules in the administration of their duties. If the clerk of courts had as little discretion in performing those duties as counsel for defendant alleges, a mere bucket would suffice for a clerk of court's office, to accept whatever an attorney deposits.
The trial court found Mulligan in contempt for violating Loc.R. 4.09(G), and fined him $200, with the fine suspended on the condition that he does not violate this same rule again.
On December 5, 2000, Mulligan filed a notice of appeal on his own behalf from the trial court's November 30, 2000 entry.
 II
The Second Assignment of Error presented for review states:
 BY FINDING APPELLANT AND MORE SPECIFICALLY UNDERSIGNED COUNSEL IN CONTEMPT, WITHOUT FIRST CONDUCTING A HEARING, THE TRIAL COURT VIOLATED THEIR DUE PROCESS RIGHT AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16
OF THE OHIO CONSTITUTION.
Mulligan argues that the trial court violated his and his client's due process rights by finding them in contempt for violating Loc.R. 4.09(G), without first conducting a hearing on the matter.
Initially, the trial court did not find Mulligan's client, Mr. Pirtle, in contempt for violating Loc.R. 4.09(G). The trial court directed its show cause order against Mulligan, found Mulligan in contempt of court for violating Loc.R. 4.09(G), and imposed a sanction against Mulligan, alone, for that violation. Furthermore, Mulligan filed a notice of appeal on his own behalf, not Mr. Pirtle's. Accordingly, only Mulligan is a proper party to this appeal.
Whether or not a defendant charged with contempt is entitled to a hearing is dependent upon whether his alleged contumacious conduct constitutes a "direct" or "indirect" contempt. A "direct contempt" is misbehavior that occurs in the actual or constructive presence of the court, which obstructs the administration of justice.[1] A court may impose punishment summarily for a direct contempt where" (1) the court has personal knowledge of the determinative facts; and (2) the misconduct requires immediate suppression to restore order to the proceedings.[2]
However, absent a "need for speed" to immediately suppress misbehavior that disrupts the court's orderly procedure, the court must hold an evidentiary hearing, even where the contempt is "direct."[3] An "indirect contempt" is misbehavior that occurs outside the actual or constructive presence of the court, and includes "[m]isbehavior of an officer of the court in the performance of official duties, or in official transactions[.]"[4]
In cases of indirect contempt, R.C. 2705.03 requires that a charge in writing be filed with the clerk of courts, with an entry thereof made upon the journal, and that the accused be given an opportunity to be heard, by himself or counsel. R.C. 2705.05 requires a court to hold a hearing on the charge, at which the court must investigate the charge, hear any answer or testimony that the accused makes or offers, and then determine whether the accused is guilty. Similarly, constitutional due process requires that a defendant charged with contempt — other than a direct contempt that is punishable summarily — be advised of the charges against him, have a reasonable opportunity to meet those charges by way of a defense or explanation, have the right to be represented by counsel, and have an opportunity to testify and call other witnesses in his behalf.[5]
Even if Mulligan's alleged misconduct were deemed to constitute direct contempt, Mulligan should have been afforded his constitutional and statutory rights to a hearing, because the trial judge did not have personal knowledge of the acts constituting the alleged contempt, and the alleged misconduct did not disrupt any courtroom proceeding. The trial court's show cause order, which required a written response, provided Mulligan with notice of the charge against him, and an opportunity to meet the charge by way of an explanation. But it fell short of the type of adversarial, evidentiary hearing contemplated by R.C. 2705.03 and2705.05, and required by constitutional due process.
While it is troubling that Mulligan, an attorney, never indicated in his response to the show cause order that he needed an evidentiary hearing to establish a defense to the charge, and equally troubling that he has not offered any explanation in his appellate brief regarding how he was prejudiced by the absence of an adversarial proceeding, it would not be appropriate to rule that he has waived this error or that the error was harmless. A party can be held to waive his fundamental constitutional rights only if does so knowingly, intelligently, and voluntarily; a waiver of those rights will not be presumed from a silent record.[6] An alleged contemnor's due process right to a hearing on a contempt charge constitutes a fundamental constitutional right. Here, Mulligan never made a knowing, intelligent, and voluntary waiver of his right to an adversarial, evidentiary hearing, and the seriousness of the error requires that prejudice be presumed to have arisen from it.
In light of the foregoing, Mulligan's Second Assignment of Error is sustained.
 III
The First Assignment of Error presented for review states:
 THE TRIAL COURT ERRED IN STRIKING PORTIONS OF APPELLANT'S RESPONSE TO SHOW CAUSE ORDER IN VIOLATION OF RULE 12(F) OF OHIO RULES OF CIVIL PROCEDURE.
Mulligan argues that the trial court erred by striking Section B of his response to the show cause order, because Civ.R. 12(F), the authority under which Mulligan presumes the trial court acted, only allows "redundant, immaterial, impertinent or scandalous matter" to be stricken from a pleading, and, Mulligan contends, a response to a show cause order is not a pleading. Although this assignment of error has been rendered moot by our disposition of Mulligan's Second Assignment of Error,[7]
several comments are in order.
First, Mulligan's reliance on Civ.R. 12(F) is misplaced, because contempt proceedings are special statutory proceedings, and, therefore, the Rules of Civil Procedure do not apply to them.8 Nevertheless, in a contempt proceeding, a court is required by constitutional due process9 and statutory procedure10 to hear any answer or testimony that the accused makes or offers in his defense. Therefore, on remand, the trial court should consider the matters it struck from Mulligan's response to the show cause order, giving them whatever weight it deems appropriate in light of the credibility and reliability of the evidence Mulligan presents regarding them.
Mulligan's First Assignment of Error is overruled, as moot in view of our disposition of his Second Assignment of Error.
 IV
Mulligan's Second Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and YOUNG, JJ., concur.
[1] R.C. 2705.01; In re Lands (1946), 146 Ohio St. 589, 595.
[2] In re Davis (1991), 77 Ohio App.3d 257, 264-265.
[3] Id. at 264.
[4] R.C. 2705.02.
[5] In re Oliver (1948), 333 U.S. 257, 275.
[6] Garfield Hts. v. Brewer (1984), 17 Ohio App.3d 216, 217.
[7] See App.R. 12(A)(1)(c).