**In re DAVIS, Appellant; City of Dayton, Appellee.**

[Cite as *In re Davis* (1991), 77 Ohio App.3d 257.]

Court of Appeals of Ohio,
Montgomery County.

No. 12318.

Decided Sept. 20, 1991.

*Charles G. Andrews,* for appellant.
*John J. Scaccia,* Assistant Prosecutor, for appellee.

GRADY, Judge.

Frederick E. Davis, Jr., appeals from the judgment and decision of the trial court, which found him in contempt of court and sentenced him to serve an eleven-day term of incarceration and to pay a fine of $2,500 and the costs of the proceeding. The city of Dayton appears as appellee and in opposition.

Appellant presents four assignments of error. He argues that the court erred when it denied his motion for continuance and proceeded to summarily punish him for contempt; that he was denied his right to counsel; and, that the evidence presented against him is insufficient as a matter of law to support his conviction.

We find that the trial court erred when it denied appellant's motion to continue the matter for an evidentiary hearing, as provided by R.C. 2705.03, and instead proceeded to punish him summarily pursuant to R.C. 2705.01, when there was no need to act immediately to suppress contempt and restore order to the court's proceedings, which had terminated two days earlier. Therefore, we sustain appellant's assignment of error concerning his motion for continuance. The other assignments will be overruled.

I

Appellant, Frederick E. Davis, Jr., is an attorney licensed to practice law. On March 22, 1990, Davis filed his notice of appearance in this matter on behalf of defendant, Larry Ealy, who had been charged with assault, resisting arrest, and disorderly conduct. As a result of pretrial conference proceedings the court set the Ealy matter for trial by jury commencing June 13, 1990.

The court and the parties expected the trial to continue until June 15 or 16, 1990.

Trial of the Ealy case commenced, as ordered, on June 13, 1990. On the second day of trial, June 14, Ealy, through Davis, filed a motion and affidavit of prejudice against the trial judge, requesting that he withdraw from the case. On that same day Davis stated in open court and before the jury that Ealy could not receive a fair trial and that he, Davis, would not participate further. The court recessed and admonished Davis that if he failed to appear for trial or made any similar remarks before the jury again the court would consider it contempt of court. The court then recessed for the day.[1] The motion was later heard by the court of common pleas, which on June 29, 1990 dismissed the motion pursuant to R.C. 2937.20 as not timely filed.

On June 15, 1990, Ealy, through his attorney, moved in writing to continue the trial proceedings. Ealy offered two grounds for his request. First, he stated that his attorney, Davis, was scheduled to be in trial in Greene County, Ohio, commencing June 18, 1990. Attached to the motion was a form of docketing statement from the Greene County Court filed in February 1990 assigning the trial before it to commence June 18, 1990. Second, Ealy attached a letter from Morris L. Brown, M.D., dated June 15, 1990, stating that Davis was suffering from pneumonia and "will be incapacitated due to his medical condition for approximately seven days." The trial court granted a continuance and ordered that the trial would resume on July 16, 1990, approximately one month later.

On June 20, 1990, both the state and Ealy filed motions for continuance. The prosecutor moved to change the trial date from July 16, 1990, because he would be away on National Guard duty at that time. The court granted the motion on that same date, resetting trial to commence July 2, 1990, at 9:00 a.m. Davis then filed a motion to continue from July 2, claiming that a key witness on behalf of Ealy would be unavailable on July 2 and that Ealy would be out of town until after July 4, 1990. Ealy's motion for continuance was overruled by the trial court several days later on June 28, 1990.

The court reconvened for the Ealy trial on the morning of July 2, 1990. Ealy was present but Davis was not. The judge attempted to locate Davis, but was unsuccessful. The court then continued the trial to the next day, ordering the jury to return then and, by written judgment entry, ordering

---

1. Appellant has not provided a transcript of the trial proceeding of June 14, 1990, at which these events took place. They were recited by the court in the course of the contempt proceeding of July 5, 1990, at Tr. 16. Appellant does not dispute them. We will accept the court's recitation as correct.

Davis to appear for trial then. The court also ordered the written entry hand-delivered to Davis.

On July 3, 1990, Davis again did not appear for trial. His client, Ealy, was present. The court then entered an order of mistrial of the charges against Ealy, finding that Davis's failure to appear on behalf of his client jeopardized Ealy's rights to due process of law.[2]

Two days after the mistrial was declared, on July 5, 1990, the trial court entered an order that a warrant issue for the arrest of Davis and that he be brought before the court to show cause why he should not be held in contempt pursuant to R.C. 2705.01 "for obstructing the due and ordinary administration of justice."

On July 5, 1990, Davis was brought before the court by officers under a warrant of arrest. He was accompanied by his attorney, Charles Andrews. The court reviewed with them the events that had occurred since June 14, 1990, including its unsuccessful efforts to contact Davis when he failed to appear for trial on July 2 and 3, 1990. The court inquired of Davis if he had any explanation or reason for his failure to appear for trial on those dates when ordered. Davis suggested that he did not appear because, in reliance on the court's first order of continuance, he expected trial to resume on July 16, 1990 and advised his client that the client could be away from Dayton during the period until July 4, 1990. However, Davis did not deny that he received timely notice that trial would resume on July 2, 1990 and offered no specific reason for his failure to appear on July 2 or 3, 1990. Davis stated simply that he was unprepared to go to trial on July 2 and 3, suggesting that the impediment was caused by his disagreements with the court.

Both Davis and his attorney requested a continuance and an evidentiary hearing, pursuant to R.C. 2705.03, concerning the issues raised by the court. The court denied the motions, stating:

"The Court is of the opinion that this matter is of such nature that it does require immediate attention for the acts and the omissions stated by the Court and other matters appearing on the record, all of which the Court feels has obstructed the administration of justice.

"The Court is convinced, by proof beyond a reasonable doubt, that, Mr. Davis, that you are guilty of Direct Contempt of Court and the Court, therefore, finds you guilty of Direct Contempt of Court."

---

**2.** A second motion and affidavit of prejudice was filed by appellant on behalf of Ealy on July 19, 1990. Subsequently, another judge was assigned by the Supreme Court to preside in the case. The matter was later tried to a jury, which on November 1, 1990, returned verdicts of not guilty in favor of Ealy on all the charges against him.

The court then proceeded to sentence Davis for his contempt.

The judgment entry of contempt filed in the matter states:

"This 5th day of July, 1990, Fred E. Davis, Jr., attorney of record for Defendant in this cause, was brought before the Court to show cause why he should not be held in contempt for his acts and omissions, obstructing the Court in the administration of justice, including but not limited to the following:

"1. Denying Defendant Larry Ealy assistance of counsel;

"2. Failing to appear for trial on the 2nd and 3rd day of July, 1990;

"3. Failing to obey direct orders of the Court; and,

"4. other matters appearing on the record.

"Contemnor, Fred E. Davis, Jr., appeared with counsel, Charles Andrews. Hearing was held in which Fred E. Davis, Jr. was advised of his acts and omissions which had obstructed the Court in the administration of justice. Contemnor, Fred E. Davis, Jr. and his attorney were given the opportunity to address the Court, to offer evidence on this issue of Direct Contempt.

"Upon matters appearing in the record, and due consideration of statements made by Fred E. Davis, Jr. and his attorney, the Court found beyond a reasonable doubt Fred E. Davis, Jr. was guilty of Direct Contempt.

"Counsel for Fred E. Davis, Jr., having been given an opportunity to speak on behalf of Fred E. Davis, Jr., and Mr. Davis personally having been given the opportunity to make a statement in his own behalf and present information in mitigation, and no sufficient cause being shown to mitigate punishment and nothing said by Fred E. Davis, Jr. as to why sentence should not be imposed, sentence and judgment was pronounced as follows:

"Wherefore, it is the judgment and sentence of the Court that Contemnor, Fred E. Davis, Jr. be imprisoned in the Dayton Human Rehabilitation Center for a term of 11 days and pay a fine of $2500 and costs of the prosecution in this case upon both of which execution is hereby awarded.

"IT IS SO ORDERED."

The order of commitment, also entered July 5, 1990, states only that appellant was convicted of contempt of court pursuant to R.C. 2705.01, and ordered the sheriff to take appellant into custody. Davis filed a timely notice of appeal that day. The trial court denied an appeal bond, which was subsequently granted by this court. Davis now presents four assignments of error concerning the proceedings before and the judgment of the trial court.

## II

## SUMMARY PUNISHMENT

Appellant's first, second, and fourth assignments of error state, respectively:

"I. The trial court erred in charging appellate with direct contempt. Argument: An attorney's mere unexcused absence to attend court is not a direct contempt punishable by Ohio Revised Code, Section 2705.01.

"II. Appellant was denied due process of law when the court denied his request for a continuance and forced appellant to immediately proceed to a hearing before the same judge who issued the contempt citation.

"First argument: Appellant was denied due process of law by the court's refusal to grant a continuance.

"Second argument: Appellant was denied due process of law by the court depriving him of an opportunity to have a fair hearing.

" * * *

"IV. The evidence presented was insufficient to sustain a finding of direct contempt of court."

These assignments of error raise substantially the same controlling issues of law and fact and will be considered together.

Contempt of court consists of an act or omission substantially disrupting the judicial process in a particular case. It may include behavior during a trial, such as disruption of the proceedings, or it may include obstructive behavior outside the courtroom. Contempt may also include disobedience of judicial orders, as, for example, where a defendant violates an injunction or where a witness refuses to answer a question when ordered to do so by a trial judge. See Dobbs, Contempt of Court: A Survey (1971), 56 Cornell L.Rev. 183, at 185–186. The failure of an attorney to appear for trial when ordered to do so may also constitute contempt. *State v. Weiner* (1974), 37 Ohio St.2d 11, 66 O.O.2d 6, 305 N.E.2d 794.

The power to punish for contempt of court "has been characterized as essential to the very existence of and inherent in a court." Martineau, Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt (1981), 50 U.Cin.L.Rev. 677. It " 'has been uniformly held to be necessary to the protection of the court from insults and oppression while in the ordinary course of its duties, *and* to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors.' " (Emphasis *sic.*) *Young v. United States ex rel. Vuitton et Fils, S.A.* (1987), 481 U.S. 787, at 798, 107 S.Ct. 2124, at 2132–2133, 95

L.Ed.2d 740, at 752, quoting *Ex parte Robinson* (1874), 86 U.S. (19 Wall.) 505, 22 L.Ed. 205.

■ While the power to punish for contempt is inherent in the court, the manner in which the court's prosecution of contempt is exercised may be regulated by the legislature. *Michaelson v. United States* (1924), 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162. Where "a procedure has been prescribed for the exercise of the power to punish contempts by rule or by statute, it is the duty of the court to follow such procedure." *State ex rel. Johnson v. County Ct.* (1986), 25 Ohio St.3d 53, at 54, 25 OBR 77, at 78, 495 N.E.2d 16, at 18. Appellate review of judgments of contempt have probably been concerned less with whether certain conduct is contumacious than with whether the procedure followed to determine and punish contempt was proper.

Two forms of proceedings are available to determine and punish contempt of court. In a summary proceeding the court may determine and punish contempt without an information, indictment, or jury. The court thus acts on the basis of facts known to it directly. In a plenary proceeding, which probably encompasses all proceedings other than summary, the alleged contemnor is afforded the basic rights of an adversary proceeding, including the right to notice of the charges and an opportunity to present evidence to rebut them. Whether and how a court may punish contempt depends in large part on whether the contempt is classified as "direct" or as "indirect."

■ A direct contempt is one committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and it may be punished summarily and without the filing of process. *In re Lands* (1946), 146 Ohio St. 589, 33 O.O. 80, 67 N.E.2d 433. The procedure to determine and punish direct contempt is now provided in R.C. 2705.01, which states:

"A court, or a judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

However, this power to punish summarily is limited in two ways.

First, the locus of the contumacious act or acts must be such that the determinative issues of the offense are known to the court personally. Under those circumstances, because the "external facts" of the contempt are known, no fact-finding determination is required and a summary proceeding is appropriate.

Second, the nature or quality of the contumacious act must be such that the orderly and effective conduct of the court's business requires its immediate suppression and punishment. *In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. The particular conduct must create "an open threat to the

orderly procedure of the court" such that if "not instantly suppressed and punished, demoralization of the court's authority will follow." *Cooke v. United States* (1925), 267 U.S. 517, at 536, 45 S.Ct. 390, at 395, 69 L.Ed. 767, at 773. In authorizing exercise of the summary power to punish, the *Oliver* court "gave no encouragement to its expansion beyond the suppression and punishment of the court disrupting misconduct which alone justified its exercise." *Id.*, 333 U.S. at 274, 68 S.Ct. at 508, 92 L.Ed. at 695. Further, the limits of the contempt authority are, in general, "the least possible power adequate to the end proposed." *Id.*, quoting *Ex Parte Terry* (1888), 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405, citing *Anderson v. Dunn* (1821), 19 U.S. (6 Wheat.) 204, 5 L.Ed. 242.

 It seems clear that under the rules of *Cooke* and *Oliver* a summary proceeding is not authorized simply because the conduct constitutes direct contempt. Even if the external facts are clear because they took place in the presence of the judge, the effect of the contumacious conduct must create a "need for speed" to immediately suppress the court-disrupting misbehavior and restore order to the proceedings. *Dobbs, supra,* 56 Cornell L.Rev. at 229. Absent that need, an evidentiary hearing is required even though the contempt is "direct."

 "Where the alleged contempt occurred outside the court's immediate presence or view it is usually denominated as constructive or indirect, and a more formal hearing, with notice and presentation of evidence, must be furnished." *Dobbs, supra,* at 222–223. Ohio does not classify any specific contempt "indirect," but provides, at R.C. 2705.02:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

"(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

"(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

"(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

"(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance."

The procedure to determine such acts is provided at R.C. 2705.03:

"In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings."

Appellant specifically requested that his contempt, if any, be determined on the grounds and according to the procedures set out in R.C. 2705.02 and 2705.03. The court overruled the motion, finding that because the contempt was "direct" it was authorized to punish appellant summarily.

It is generally held that any absence of an attorney from a trial, hearing, or other proceeding which he is legally required to attend may be punished as contempt of court, unless the attorney was unable to be present, or unaware that he was required to attend at the time in question, through no fault of his own. See Annotation, Attorney's Failure to Attend Court (1982), 13 A.L.R.4th 122. See also, *State v. Weiner, supra.* The offense, therefore, is the failure of an attorney, without valid excuse, to be present when required. *Chula v. Super. Ct.* (1962), 57 Cal.2d 199, 18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421. Whether the act may be punished summarily depends on (1) whether the determinative facts of the offense are known to the court personally and (2) whether the immediate suppression of the misconduct is required.

The various American jurisdictions are of two views concerning summary punishment of an attorney's absence, differing according to whether the contempt is held to be "direct" or "indirect." Some of this difference is due to the semantical problem of whether it constitutes an offense committed in the presence of the court, where the attorney is supposed to be, or outside the court, where he is.

Some jurisdictions have treated attorney absences as direct contempt, reasoning that the absence is an event immediately evident to the court, which thus has direct knowledge of the contempt and needs no hearing to support its judgment, while the attorney bears the burden of explaining his conduct. If the attorney then fails or refuses to explain his conduct, that fact is also immediately evident to the court, which is then authorized to find him in contempt without evidentiary hearing. Generally, the absence alone does not constitute contempt; an essential element of the offense is the inadequacy of the explanation. *In re Yengo* (1980), 84 N.J. 111, 417 A.2d 533, 13 A.L.R.4th 102, certiorari denied (1981), 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110.

Other jurisdictions hold the contrary view; that while the attorney's absence is known to the court directly the reasons for his absence so necessarily

involve matters outside the court's direct knowledge that the contempt must be classified as indirect. In these cases the court reasons that intent is an essential element which cannot be known from the external fact of absence and, thus, requires an evidentiary hearing. While Ohio has not specifically adopted this rule, the direction of Ohio cases applies it. *State v. Johnson* (1986), 25 Ohio St.3d 53, 25 OBR 77, 495 N.E.2d 16; *Oakwood v. Wuliger* (1982), 69 Ohio St.2d 453, 23 O.O.3d 398, 432 N.E.2d 809; *State v. Weiner, supra; Weiland v. Indus. Comm.* (1956), 166 Ohio St. 62, 1 O.O.2d 198, 139 N.E.2d 36.

Though Ohio has generally treated an attorney's absence from court as an indirect contempt, and thus one requiring the procedures contemplated in R.C. 2705.03, we are not prepared to hold as a matter of law that it must be so treated in every case and that a court may not proceed to summarily punish such contempt pursuant to R.C. 2705.01. Those statutes cannot abridge the power of a court to punish contempt, the power being inherent and necessary to the exercise of judicial functions. *Hale v. State* (1896), 55 Ohio St. 210, 45 N.E. 199. While the court is bound to follow the procedure prescribed by statute, its choice of procedures is an element of its inherent power and a function of the nature of the contempt with which it is presented.

Appellant argues that the court was bound to extend him the right of an evidentiary hearing as his contempt, if any, was "indirect." Certainly, the fact of his absence from trial on July 2 and 3, 1990, was known to the court personally and directly. The reasons for his absence were, however, not known. It appears that the court may have concluded that appellant simply carried out his earlier threat not to return to court because, in his view, his client could not receive a fair trial. However, that threat was not crucial to the court's determination of appellant's intent. When asked to explain the reasons for his absence, appellant could provide no clear or satisfactory explanation. The trial court obviously rejected his responses as equivocal and prevaricative and found that appellant had no excuse for his failure to appear. We are not prepared to find that the record as a whole compels a contrary conclusion.

Even though the trial court may not have erred in finding appellant's conduct to be "direct" contempt, the court was not authorized to punish it summarily. The causes specified by the court on July 5, 1990 concerned appellant's conduct in the trial of Larry Ealy. That proceeding had terminated in a mistrial two days earlier, on July 3, 1990. Though the mistrial was occasioned by appellant's conduct, the court was not faced or presented on July 5 with a form of court-disrupting misbehavior which constituted an *open threat* to the orderly procedure of the court and required immediate suppres-

sion and punishment to preserve the order of the court's proceedings. Indeed, appellant was then not even before the court but was brought before it from elsewhere under arrest. The need, if any, for immediate action terminated with the mistrial. There was no longer any "need for speed," which is a concomitant requirement for a summary proceeding. By following a summary procedure the court exceeded its inherent authority, as discussed in *Cooke* and *Oliver, supra.*

Under these circumstances, and though the contempt may have been "direct," the court was required to proceed under R.C. 2705.03 and conduct an evidentiary hearing to determine appellant's alleged contempt. The form of summary proceeding provided by R.C. 2705.01 requires not only "direct" contempt but a palpable need to act immediately. No matter how offensive the conduct concerned, summary punishment is not authorized unless that need exists.

On the assignments of error presented and discussed under this heading, we overrule the first and fourth assignments of error. The facts known to the court personally were sufficient to constitute "direct contempt," and we cannot find that the evidence was insufficient to convince a reasonable mind beyond a reasonable doubt that appellant Davis failed, without valid excuse, to attend trial as ordered. However, we sustain appellant's second assignment of error. There was no matter or act of contempt before the court on July 5, 1990, which required immediate suppression and punishment, and for that reason the court was not authorized to proceed summarily pursuant to R.C. 2705.01. The court erred when it denied appellant's motion to continue in order to consider the causes for contempt in an evidentiary hearing, as provided in R.C. 2705.02 and 2705.03.

## III

## RIGHT TO COUNSEL

Appellant's third assignment of error states:

"The court violated appellant's right to counsel as protected by Section 10, Article I, of the Ohio Constitution and by the Sixth Amendment to the United States Constitution."

Resolution of this issue depends on the character of the proceeding and the nature of the penalty imposed.

Generally, the right to counsel does not attach to the adjudication of a direct contempt, at least without further reference to the penalty imposed. Direct contempt requires no adjudication of the determinative issues. They are known to the court, which may make a finding and judgment on that basis

and proceed to consider the sanction. As the proceeding to that point is not adversarial in character and requires no determinations of fact, there is no need of or right to counsel.

The character and purpose of the sanction imposed determine whether the contempt is civil or criminal. If it is for civil contempt the punishment is remedial and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. *Gompers v. Bucks Stove Co.* (1911), 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

The definition of a punitive sanction incorporates three basic concepts: (1) the sanction is a punishment, (2) the sanction is imposed for conduct that has occurred in the past, and (3) the purpose of the sanction is to uphold the authority of the court. A remedial sanction, on the other hand, is a sanction imposed for the purpose of terminating a continuing contempt of court. This definition incorporates the traditional aspect of a civil contempt sanction as one intended to coerce the termination of a specific continuing misconduct. See Martineau, *supra*, 50 U.Cin.L.Rev. at 693–694. In civil contempt:

"Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court." *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, at 253–254, 18 O.O.3d 446, at 449, 416 N.E.2d 610, at 613.

When the sanction imposed is punitive in nature the proceeding is criminal and certain rights must be afforded the accused contemnor. He is entitled to the presumption of innocence, to be proved guilty beyond a reasonable doubt, and the right to refuse to testify against himself. *Gompers v. Bucks Stove, supra.* He must be advised of the charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses. *Cooke v. United States, supra.* He must be given a public trial before an unbiased judge. *In re Oliver, supra.* He must be afforded a jury trial for "serious" contempts. *Bloom v. Illinois* (1968), 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522; see, also, *Young v. United States ex rel. Vuitton, supra.*

It is clear that the proceeding below was criminal in nature. The sanction imposed was punitive; it was a sentence for a definite term, imposed to punish past conduct, and to vindicate the authority of the court. It was neither coercive, conditional, nor designed to relieve an adverse party of the effects of Davis's contempt.

Because the proceeding was criminal, appellant was entitled to the assistance of counsel. *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. The right attached from the time judicial proceedings commenced. *Brewer v. Williams,* (1977), 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424. It extends to every critical stage of the proceedings. *Hamilton v. Alabama* (1961), 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114.

Appellant was accompanied at the hearing by his counsel, Charles Andrews, with whom appellant was able to consult and who spoke on appellant's behalf. We can find no point at which appellant was specifically deprived of his right to counsel. However, in denying appellant's motion for continuance and his request for an evidentiary hearing the court necessarily curtailed counsel's role in several important respects. The constitutional concerns arising from that matter are, however, encompassed in the other, specific rights discussed above which are not a part of this assignment of error. We cannot find that appellant was deprived of his right to counsel in the context of and for the purposes of the form of proceeding concerned.

Appellant's third assignment of error will be overruled.

## IV

## CONCLUSION

Having sustained the second assignment of error, we will vacate appellant's conviction and remand the matter to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WILSON and WOLFF, JJ., concur.