OPINION
{¶ 1} This is an appeal by Jon Paul Rion, the trial counsel for defendant Ryan Daly, from a $500 fine imposed as a sanction for contempt. Rion was summarily found in contempt without any prior notice or opportunity to be heard, on the basis that allegations he made in motions for post-conviction relief, and supporting memorandum, filed in support of his client, the defendant below, libeled the trial judge, and had a tendency to bring the trial court into disrepute.
 {¶ 2} We agree with Rion that the trial court erred by punishing his conduct as a direct contempt, in a summary proceeding, without notice and the opportunity to be heard, and without the benefit of a neutral and detached judicial officer. Accordingly, the order finding Rion in contempt, and fining him $500 as a sanction, is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 3} Jon Paul Rion, the contemnor-appellant, represented Ryan Daly, the defendant, on two counts of Vehicular Homicide arising from a collision in which Daly's passenger was killed. Both counts included an allegation that Daly was driving under a license suspension issued under "any provision" of the Ohio Revised Code, which enhanced the penalties for the offenses. An agreement was reached between Daly and the State that he would plead no contest to the charges, while reserving, with his not guilty plea, his defense to the driving-under-suspension issue. Apparently, the only real factual issue in the case was whether Daly's license had been suspended under a provision of the Ohio Revised Code, or under some other authority. There was no dispute that it was suspended at the time of the collision.
 {¶ 4} In the entry from which this appeal is taken, the trial court acknowledges that there was discussion of this proposed agreement with the trial court, and that: "The Court specifically recalls telling defense counsel that it would agree to continue the defendant's bond pending the trial on the specification." In an affidavit offered by Rion, Andrew Wilson, the prosecutor, has averred that: "It was also understood [at a pretrial conference with the trial court] that if the Defendant pled no contest, he would be allowed to stay out of jail on bond pending a pre-sentence investigation."
 {¶ 5} The trial court evidently began to have doubt whether a hybrid plea — no contest to the charges, but not guilty on the suspended driver's license issue — was possible. A new arrangement was worked out. Under the new arrangement, Daly would waive his right to a jury trial, and stipulate to all elements of the offenses except driving under a license suspension pursuant to "any provision" of the Ohio Revised Code. The trial court would hear evidence, and adjudicate Daly's guilt.
 {¶ 6} The new arrangement was implemented. About an hour after the conclusion of the taking of evidence, the trial court announced its verdict, finding Daly guilty as charged on both counts. The hearing concluded as follows:
 {¶ 7} "At this time the Court is going to order a Presentence Investigation to be conducted by the Adult Probation Department. Court is going to schedule disposition for February the 3rd, 2006; and the defendant is going to be held without bond pending disposition.
 {¶ 8} "MR. RION: Your Honor, may we approach?
 {¶ 9} "THE COURT: That's all for today.
 {¶ 10} "MR. RION: Your Honor —
 {¶ 11} "(THEREUPON, proceedings concluded at 12:26 p.m. on Friday, January 13, 2006.)"
 {¶ 12} In an affidavit, Rion has averred that he believed he had an understanding with the trial court that, as part of the arrangement, his client could remain on bond pending the pre-sentence investigation. In the prosecutor's affidavit, Wilson acknowledges that he had an understanding with Rion that under the new arrangement, Daly could remain out of jail on bond pending the pre-sentence investigation, but Wilson does not aver that this subject was discussed with the trial court in connection with the new, revised arrangement whereby Daly would waive his right to a jury trial, stipulate to all the elements except the driving under a suspension issue, and try that issue to the judge. Again, in his affidavit, Wilson does acknowledge that the agreement that Daly could stay out of jail on bond pending the pre-sentence investigation was part of the original proposal, which was discussed with the trial court.
 {¶ 13} Frustrated by his inability to continue Daly's bond, in accordance with the arrangement he thought he had worked out, Rion filed two motions — a "Post Conviction Motion," and a "Motion to Reinstate Bond" — on January 18, 2006. He attached his own affidavit, the affidavit of his client, Ryan Daly, and the affidavit of the prosecutor, Andrew Wilson. It is Rion's memorandum in support of these motions that the trial court found contumacious, leading to the sanction from which this appeal is taken. That memorandum is worth setting forth in full herein:
 {¶ 14} "BRANCH I.
 {¶ 15} "It was with the specific condition of Defendant waiving a jury trial that it was agreed upon between the Prosecuting attorney, defense counsel and this Court, that Defendant would remain out on bond pending a pre-sentence investigation. Defense counsel has conferred with the Prosecuting attorney with regard to this matter and he has confirmed this agreement that was entered into with the Court prior to Mr. Daly choosing to waive his right to a jury. The Court flagrantly abused its discretion in this case by misleading the Defense counsel and Prosecution that Mr. Daly would not be held in jail pending the results of the pre-sentence investigation.
 {¶ 16} "Criminal Rule 33(A)(1) states the following as a ground that a new trial may be granted: [Quotation omitted.]
 {¶ 17} "The U.S. Supreme Court has strictly construed waivers of constitutional rights by criminal defendants by examining their inducements. In Santobello v. New York, the defendant waived his right to a jury trial and entered a guilty plea based upon negotiations with the prosecuting attorney that resulted in a plea bargain. At sentencing a new prosecutor who was not present during the initial plea bargaining broke the plea bargain which was that no sentence recommendation would be made by the prosecution, and recommended the maximum sentence.404 U.S. 262 (1971); See also Mabry v. Johnson, 467 U.S. 504 (1984). The Supreme Court concluded that the interests of justice in upholding plea bargains entered into by defendants outweighed the question of whether the sentencing judge would have been influenced without a recommendation. Id. At 262. The Court held that the agreement should be specifically enforced. Id. Like Santobello, the defendant in this case waived an equally important constitutional right based on representations by the Judge that induced his waiver. The inducement to waive a Jury was subsequently revoked unexpectedly by one of the parties to the agreement, namely, the Court itself.
 {¶ 18} "Mr. Daly specifically waived his right to a jury trial in this case based on the fact that the Court agreed to not hold him in jail pending the pre-sentence investigation, assuming that he would be found guilty. At the conclusion of the Court's reading of the verdict, the Court immediately left the bench and feigned that it had no memory of the agreement entered into between the State, Defense Counsel, and the Court. Prosecuting Attorney on behalf of the state, Andrew Wilson, specifically recalled the agreement during discussions with defense counsel following this `radical' act by the Court.
 {¶ 19} "Had it not been for the agreement to not revoke the bond pending a pre-sentence investigation, Mr. Daly's right to a jury trial would not have been waived.
 {¶ 20} "BRANCH II.
 {¶ 21} "The Court deprived Mr. Daly of his Sixth Amendment right to a jury trial by misleading him into waiving his right to a jury based on the tripartite agreement between the State, Defense Counsel and the Court. The agreement was specific in that if a guilty verdict was returned at the bench trial that Mr. Daly would not be remanded to the county jail pending a pre-sentence investigation.
 {¶ 22} "The Sixth Amendment right to a trial by jury is enforceable against the states as a result of incorporation through theFourteenth Amendment's due process clause. Criminal Rule 23([A]) provides that a defendant may knowingly, intelligently and voluntarily waive in writing his right to a trial by jury.
 {¶ 23} "Courts indulge every reasonable presumption against waiver of fundamental rights. `Waiver of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'Brady v. United States, 397 U.S. 742, 748 (1970). See also United Statesv. Canady, 126 F.3d 352, (2nd Cir. 1997). `The act of waiver must be shown to have been done with awareness of its consequences.'
 {¶ 24} "In this case Mr. Daly was prevented from ever possessing the ability to make a knowing and intelligent waiver of his right to a jury trial because the court mislead defense counsel into believing that it would follow through with its agreement to allow him to remain out on bond pending a pre-sentence investigation. Because a right to a jury trial is a constitutional right (see e.g. Duncan v. Louisiana,391 U.S. 145, (1968)), which may be waived by a defendant in favor of a bench trial, Patton v. United States, 281 U.S. 276 (1930), the waiver must be voluntary and knowing. Brady v. United States, 397 U.S. 742, 748 (1970). No knowing and voluntary waiver existed in this case, and therefore it is respectfully requested that this case be dismissed based on a violation of Mr. Daly's Sixth Amendment right to a jury trial.
 {¶ 25} "WHEREFORE, for the foregoing reasons, it is respectfully requested that this Court grant Mr. Daly a new trial or in the alternative dismiss this case."
 {¶ 26} Rion filed, on behalf of his client, a supplemental memorandum, which added nothing, either of substance or of rhetorical flourish, to his prior motion, and a motion to recuse the trial judge, upon the ground that the post-conviction motions addressed actions taken by the trial court, so that "[i]t would be fundamentally unfair for [the trial judge] to preside over these motions based on that fact alone and a violation of the Defendant's Due Process Rights guaranteed by theFourteenth Amendment of the Constitution of the United States."
 {¶ 27} The trial court decided the "post-conviction" motions at the hearing scheduled for disposition, on February 3, 2006. The trial court overruled the motions, setting forth its reasoning, and specifically rejecting Rion's claim that the trial court had ever agreed that his client could remain out of jail on bond pending the pre-sentence investigation, once his client had been adjudicated guilty of a felony. Then, without any prior notice to Rion that the issue of his contempt of court would be considered, and without allowing Rion any opportunity to be heard on that issue, the trial court indicated its displeasure with Rion, found him in direct contempt, by reason of the post-conviction motions and memoranda he had filed, citing State v. Kilbane (1980),61 Ohio St.2d 201, and imposed as a sanction a fine of $500, "to be paid to the Clark County Clerk's Office before the end of business today." Rion timely paid the fine, that day, with a notice, filed in the trial court, "that the $500.00 fine is hereby being paid without prejudice, subject to any determination of an appellate court."
 {¶ 28} The trial court did not proceed to the imposition of sentence at the hearing on February 3, 2006, as scheduled. The trial court explained:
 {¶ 29} "Defense counsel's conduct, specifically the remarks made in his January 18, 2006 motions, has not only been disrespectful to the Court, offended the dignity of the Court, and embarrassed the Court, but it has now obstructed, impaired, and impeded the efficient administration of justice. Defense counsel's remarks have compelled this Court to act, and to act expediently. Having just severely reprimanded defense counsel, the Court feels compelled to pledge to the community, and, more specifically, those involved in this case, that it will not allow defense counsel's conduct to influence the ultimate outcome of this case. Nevertheless, the Court cannot, in good conscience, proceed directly to the defendant's disposition without first creating a `cooling off period. Therefore, I will reschedule disposition for Friday, February 10, 2006 at 8:30 A.M. I extend my apologies to those of you who are so eager for closure in this case."
 {¶ 30} From the finding and sanction of contempt, Rion appeals.
 II {¶ 31} Rion's First Assignment of Error is as follows:
 {¶ 32} "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING ATTORNEY RION GUILTY OF DIRECT CRIMINAL CONTEMPT IN THE ABSENCE OF AN IMMINENT THREAT TO THE COURT'S ABILITY TO CONDUCT ORDERLY PROCEEDINGS."
 {¶ 33} As the trial court noted in its entry, it punished Rion for a direct, criminal contempt. Rion contends, and we agree, that the trial court erred in treating Rion's allegedly contumacious conduct as direct contempt.
 {¶ 34} As a preliminary matter, we note that Rion, at the oral argument of this appeal, disclaimed any assertion that there is insufficient evidence upon which to predicate a finding of contempt, taking the position that it is premature to reach that issue in the procedural posture of this case.
 {¶ 35} Stripped of the rhetoric accompanying both Rion's memoranda in support of the post-conviction motions he filed in support of his client, and the trial court's contempt findings, the trial court essentially concluded that Rion had libeled it by claiming that the trial court had entered into an agreement that Daly would be allowed to remain out of jail on bond pending a pre-sentence investigation, and then dishonoring that agreement. Without commenting upon the ultimate issue of whether Rion's conduct was contumacious, we note that this disagreeable episode, which brings no luster to the traditions of the Clark County bench and bar, could probably have been averted had the trial court simply allowed Rion to have been heard at the end of the trial, after the announcement of the verdict and the termination of bond. Any misunderstanding concerning the existence, or non-existence, of an agreement concerning the continuation of bond could likely have been clarified at that time.
 {¶ 36} The trial court, and the State, in its appellate brief, citeState v. Kilbane (1980), 61 Ohio St.2d 201, 400 N.E.2d 386,1980 Ohio LEXIS 637, for the proposition that Rion's conduct could properly be punished summarily as a direct contempt of court. In our view, that case is distinguishable.
 {¶ 37} In Kilbane, a witness in a first-degree murder trial was alleged to have been the common-law wife of one of the defendants. After three days of hearings on this issue, the trial court ruled that the witness, Carol Braun, was not the common-law wife of one of the defendants, and she was called to testify. Although present, Braun refused to take the stand, be sworn, or testify. She was found in contempt, and sentenced to six months in the county jail, subject to the condition that she could purge herself of contempt if she should testify before the conclusion of the trial. The Supreme Court held that this was a proper finding and sanction for direct contempt, because Braun had "refused to testify in open court in the immediate view of the judge after being fully apprised of the consequences of such conduct. This was a blatant obstruction of justice." Id., at 204. It should also be noted that Braun was present with her counsel in the courtroom when her contumacious conduct was committed, found to have been contumacious, and punished, as a direct contempt. Id., at 202.
 {¶ 38} There is no indication in the opinion in State v. Kilbane that the contemnor lacked the opportunity to argue, either personally, or through her counsel, that her conduct was not contumacious, or in mitigation of the sanction. By contrast, Rion had no prior notice that the trial court was considering holding him in contempt, and had no opportunity to argue that his conduct was not contumacious, or in mitigation.
 {¶ 39} Also, Braun's conduct in refusing to testify, in State v.Kilbane, supra, had the immediate, direct effect of obstructing the proceedings, by precluding her testimony from being elicited and received in evidence. No similar effect can be discerned in the case before us. The State seems to be arguing that the trial court was so upset at having been libeled in the filing on January 18, 2006, that it was unable to proceed with Daly's sentencing on February 3rd, over two weeks later. And yet, the trial court evidently deemed the week between February 3rd and February 10th to be a sufficient "cooling off period to permit it to proceed with sentencing. We find the State's argument unpersuasive.
 {¶ 40} The libeling of the trial court allegedly inherent in the motions and memorandum Rion filed on January 18, 2006, did not constitute "an open threat to the orderly procedure of the court," that, "if not instantly suppressed and punished, demoralization of the court's authority will follow." In re Davis (1991), 77 Ohio App.3d 257, 263-264,602 N.E.2d 270, citing Cooke v. United States (1925), 267 U.S. 517, at 536, 45 S.Ct. 390, at 395, 69 L.Ed. 767, at 773.
 {¶ 41} Furthermore, the allegedly contumacious conduct did not occur in the presence of the court. The conduct was the filing of an allegedly libelous document. For all the trial court knew, a runner from Rion's office might have mistakenly filed an earlier draft, signed by Rion, but deliberately withheld by him from filing until he had "cooled down" enough to water down its rhetoric. The trial court would have no way of knowing, since it gave Rion no notice or opportunity to be heard in the matter. To be punished as a direct contempt, contumacious conduct must both threaten a court's immediate ability to conduct its proceedings, and take place in the presence of the judge. In re Davis, supra; In theMatter of Lands (1946), 146 Ohio St. 589, 67 N.E.2d 433.
 {¶ 42} Rion's First Assignment of Error is sustained.
 III {¶ 43} Rion's Second Assignment of Error is as follows:
 {¶ 44} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AFFORD ATTORNEY RION REQUIRED DUE PROCESS RIGHTS INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO AN UNBIASED DECISION-MAKER."
 {¶ 45} Rion's lack of notice and an opportunity to be heard stem from the fact that the trial court erroneously proceeded as if this were a proceeding in direct contempt, rather than in indirect contempt, which we have addressed in Part II, above.
 {¶ 46} There remains Rion's argument that the trial court erred by personally adjudicating the issue of his contempt, despite having become personally embroiled therein. We agree with Rion. That the trial judge was no longer a neutral, detached adjudicator is apparent from the fact that he found it necessary to allow a one-week "cooling off" period from his adjudication of contempt until Daly's sentencing. Further indications that the trial judge was no longer neutral and detached, on the issue of Rion's contempt, can be found in the language in the trial court's entry finding Rion in contempt:
 {¶ 47} "The remarks defense counsel made in his January 18, 2006 motions are disrespectful to the Court, they have offended the dignity of the Court, and they have embarrassed the Court in the performance of its function."
 {¶ 48} " * * * but he has lodged a personal and ethical attack on the Court."
 {¶ 49} " * * * unjustifiably attacking the Court's character, reputation, and integrity is crossing the line. You might be able to practice law like that in other courtrooms, but this Court refuses to tolerate your irresponsible, unwarranted, unfounded, and offensive remarks."
 {¶ 50} "Defense counsel's conduct, specifically the remarks made in his January 18, 2006 motions, has not only been disrespectful to the Court, offended the dignity of the Court, and embarrassed the Court, * * *."
 {¶ 51} Whether the trial judge was justified at taking personal offense at Rion's remarks is not an issue that is presently before us. It is clear, though, that the trial judge took great personal offense at what he regarded as totally insupportable allegations against him, personally, in Rion's filings.
 {¶ 52} An accused contemnor has the right to an impartial judge who has not become personally embroiled in the contempt issue. Offut v.United States (1954), 348 U.S. 11, 13-14. See State v. Mulligan, 2003-Ohio-782, Montgomery App. No. 19359.
 {¶ 53} Rion's Second Assignment of Error is sustained. Upon remand, the issue of Rion's contempt should be assigned to another judge.
 IV {¶ 54} Both of Rion's assignments of error having been sustained, the order finding him in contempt of court, and fining him $500 as a sanction, is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 . . . . . . . . . . . . .
GRADY, P.J., and WOLFF, J., concur.