OPINION
{¶ 1} Richard Mayhall and John Butz, trial counsel for Jason Dean in his capital murder case, appeal from a judgment of the Clark County Court of Common Pleas, which found them to be in direct criminal contempt and imposed a fine of $2,000 each. Mayhall and Butz appeal from *Page 2 
and Butz appeal from the contempt citations. As discussed infra, we agree with Mayhall and Butz that the trial court erred in holding them in contempt without notice and the opportunity to be heard and without the benefit of a neutral and detached judicial officer.
 {¶ 2} The following facts are relevant to this appeal.
 {¶ 3} Mayhall and Butz represented Dean in his capital murder case, which involved six counts of attempted murder, two counts of aggravated murder, four counts of having weapons while under disability, two counts of aggravated robbery, and two counts of improperly discharging a firearm into a habitation. Prior to trial, Dean's counsel filed numerous motions, including a motion for disclosure of exculpatory evidence and a demand for discovery. On April 20, 2006, the state filed a certification that disclosure of the address of a witness, Crystal Kaboos, might subject her to physical harm or coercion (Doc. #126). Dean requested a hearing on the state's certification.
 {¶ 4} On April 24, 2006, the court held a hearing on the state's certification as well as other issues. No witnesses testified. The trial court "accepted the State's certification that the disclosure of witness Kaboos' address may subject her to physical harm or coercion," and it held that the state need not disclose Kaboos' address to the defense. In the interest of justice and fairness, the court further required the state to make Kaboos available at the Clark County Common Pleas Courthouse the week of May 8, 2006 for defense counsel and their investigator to interview her; however, the court did not order Kaboos to speak with the defense. (Doc. #128).
 {¶ 5} On May 3, 2006, Dean filed a motion for the court to disqualify itself. (Doc. #138). Citing State v. Gillard (1988), 40 Ohio St.3d 266,533 N.E.2d 272, Dean asserted that, because the trial court heard the evidence regarding the Crim.R. 16(B)(1)(e) certification, the court may not *Page 3 
certification, the court may not preside over his trial. TheGillard court held that "when the state seeks to obtain relief from discovery or to perpetuate testimony under Crim.R. 16(B)(1)(e), the judge who disposes of such motion may not be the same judge who will conduct the trial." Gillard, 40 Ohio St.3d 226 at paragraph one of the syllabus. Dean noted that, at the April 24, 2006 hearing, the prosecutor had represented to the court that Kaboos had been threatened with death, including a specific threat to shoot her in the face.
 {¶ 6} On May 5, 2006, the court held another hearing to address several pending motions, including the motion to disqualify. The court determined that it would take the matter under advisement. (Doc. #142). Later that day, the court filed an entry overruling the motion to disqualify. The court cited two reasons: (1 ) that the court anticipated "overwhelming evidence of the defendant's guilt at trial which would render a Gillard violation harmless," and (2) that the court did not hear any evidence about Dean and whether he had made threats. The court noted that the April 24th hearing was not an evidentiary hearing and consisted of only statements by counsel. (Doc. #143).
 {¶ 7} Jury selection began on May 8, 2006. On May 11, 2006, Mayhall and Butz filed an application for the disqualification of the trial judge with the Supreme Court of Ohio . (Doc. #149). They cited the judge's entry denying the motion to disqualify, among other things, as evidence of the court's bias and prejudice. Chief Justice Moyer denied the application for disqualification on May 11, 2006.
 {¶ 8} On May 12, 2006, the trial court informed counsel that it had "very serious concerns about defense counsel and the manner in which they're operating in this courtroom." However, the court further stated that it would "take that matter up at a later time * * *, preferably at the conclusion of this case." *Page 4 
 {¶ 9} On May 15, 2006, Mayhall and Butz filed a motion to withdraw as counsel for Dean, stating that the court's "great concern" about defense counsel's conduct and the implication that they had done something unethical and/or contemptuous would impair their ability to effectively represent their client. The court denied the motion. The court also repeatedly denied defense counsel's subsequent requests to address their conduct and not to wait until the end of trial.
 {¶ 10} On June 13, 2006 — after trial had concluded and Dean had been sentenced — the trial court filed an entry addressing the alleged misconduct by Mayhall and Butz. The trial court found that "defense counsel, in a calculated scheme to remove [the judge] from the Dean case, manipulated the Court into presiding over a Criminal Rule 16(B)(1)(e) hearing so that the Court would be disqualified from presiding over the Dean trial pursuant to Gillard." The court determined that the conduct warranted a direct criminal contempt finding, and it fined both counsel $2,000. The court collected the fines by discounting $2,000 from the compensation of each attorney for representing Dean.
 {¶ 11} Mayhall and Butz raise two assignments of error on appeal. We address the assignments in reverse order.
 {¶ 12} II. "THE COURT BELOW ERRED IN SUMMARILY FINDING DEFENSE COUNSEL IN DIRECT CRIMINAL CONTEMPT OF COURT FOR CONDUCT THAT DID NOT OCCUR IN THE PRESENCE OF THE COURT. FURTHERMORE, THE TRIAL COURT WAS SO EMBROILED IN THE CONTROVERSY THAT IT SHOULD HAVE REFERRED THE FACT FINDING TO ANOTHER JUDGE. THESE ERRORS VIOLATED DEFENSE COUNSEL'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ *Page 5 
CONSTITUTION AND ARTICLE I, §§ 10 AND 16 OF THE OHIO CONSTITUTION."
 {¶ 13} In their second assignment of error, Mayhall and Butz argue that, to the extent their conduct was contemptuous, it constituted indirect contempt and, therefore, they should have been afforded due process protections. Alternatively, Mayhall and Butz contend that, even if the conduct constituted direct contempt, there was no imminent threat to the administration of justice and, consequently, a summary proceeding was inappropriate.
 {¶ 14} "Contempt of court consists of an act or omission substantially disrupting the judicial process in a particular case." In re Davis
(1991), 77 Ohio App.3d 257, 262, 602 N.E.2d 270. Courts have inherent authority to punish contemptuous conduct. Id. at 262-63. "The propriety of imposing punishment for contempt often turns on whether the contempt is direct or indirect, and on whether it is civil or criminal in nature." State v. Kitchen (1998), 128 Ohio App.3d 335, 341,714 N.E.2d 976.
 {¶ 15} Contempt falls within two general categories — civil and criminal — based on the character and purpose of the sanction. Id. "Sanctions for criminal contempt are punitive in nature and unconditional." State v. Montgomery, Montgomery App. No. 20036,2004-Ohio-1699, at ¶ 18. They are intended to punish the offender for past disobedience of a court order or other contemptuous conduct and to vindicate the authority of the court. Id. "Civil contempt sanctions, on the other hand, are remedial and are intended to coerce the contemnor into complying with the court's order." Id. The punishment for civil contempt is conditional, and the contemnor has an opportunity to purge himself of the contempt and avoid the punishment by complying with the court's order. Id.
 {¶ 16} Mayhall and Butz assert — and we agree — that this case involves criminal, as *Page 6 
opposed to civil, contempt. The trial court's contempt order operated as punishment for the defense counsel's alleged manipulation of the court and "to vindicate the authority of the law and the court."Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 254,416 N.E.2d 610; State v. Palmer, Montgomery App. No. 19921, 2004-Ohio-779, at ¶ 6. The contempt finding had no remedial or coercive purpose, nor was it for the benefit of a complainant. Brown, 64 Ohio St.2d at 253.
 {¶ 17} Contempt may also be either direct or indirect, and the distinction lies in where the conduct occurs. With direct contempt, the conduct occurs in the presence of the court; indirect contempt occurs outside the court's presence but obstructs the orderly administration of justice. State v. Perkins, 154 Ohio App.3d 631, 2003-Ohio-5092,798 N.E.2d 646, ¶ 36. "Direct contempt usually involves some misbehavior which takes place in the actual courtroom." In re Purola (1991),73 Ohio App.3d 306, 310, 596 N.E.2d 1140.
 {¶ 18} "Whether and how a court may punish contempt depends in large part on whether the contempt is classified as `direct' or as `indirect.'" Davis, 77 Ohio App.3d at 263. With indirect contempt, the contemnor must be afforded certain procedural safeguards, including a written charge, entry on the court's journal, an adversary hearing, and an opportunity for legal representation. City of Xenia v.Billingham (Oct. 9, 1998), Greene App. No. 97-CA-124; R.C. 2705.03.
 {¶ 19} In contrast, R.C. 2705.01, which governs direct contempt, "permits a court to punish a direct contempt summarily, and due process does not require that the contemnor be granted a hearing."Kitchen, 128 Ohio App.3d at 341. However, as we stated inDavis, the power to punish summarily is limited in two ways:
 {¶ 20} "First, the locus of the contumacious act or acts must be such that the determinative *Page 7 
determinative issues of the offense are known to the court personally. Under those circumstances, because the `external facts' of the contempt are known, no fact-finding determination is required and a summary proceeding is appropriate.
 {¶ 21} "Second, the nature or quality of the contumacious act must be such that the orderly and effective conduct of the court's business requires its immediate suppression and punishment. In re Oliver (1948),333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. The particular conduct must create `an open threat to the orderly procedure of the court' such that if `not instantly suppressed and punished, demoralization of the court's authority will follow.' Cooke v. United States (1925), 267 U.S. 517, at536, 45 S.Ct. 390, at 395, 69 L.Ed. 767, at 773. In authorizing exercise of the summary power to punish, the Oliver court `gave no encouragement to its expansion beyond the suppression and punishment of the court disrupting misconduct which alone justified its exercise.' Id.,333 U.S. at 274, 68 S.Ct. at 508, 92 L.Ed. at 695. Further, the limits of the contempt authority are, in general, `the least possible power adequate to the end proposed.' Id., quoting Ex Parte Terry (1888), 128 U.S. 289,9 S.Ct. 77, 32 L.Ed. 405, citing Anderson v. Dunn (1821), 19 U.S. (6
Wheat.) 204, 5 L.Ed. 242.
 {¶ 22} "It seems clear that under the rules of Cooke and Oliver a
summary proceeding is not authorized simply because the conduct constitutes direct contempt. Even if the external facts are clear because they took place in the presence of the judge, the effect of the contumacious conduct must create a `need for speed' to immediately suppress the court-disrupting misbehavior and restore order to the proceedings. Dobbs, supra, 56 Cornell L.Rev. at 229. Absent that need, an evidentiary hearing is required even though the contempt is `direct.'" Davis, 77 Ohio App.3d at 263-64. *Page 8 
 {¶ 23} Upon review of the record, we doubt that the trial court properly deemed Mayhall's and Butz's action to be direct contempt. Although certain actions occurred in the presence of the court, the trial court's ruling also cited to motions filed by defense counsel and to an audio recording of a conversation between Dean and his brother while Dean was incarcerated at the Clark County Jail. We have held that the libeling of the trial court in motions and memoranda does not constitute direct contempt. See State v. Daly, Clark App. No. 06-CA-20,2006-Ohio-6818. Moreover, it is apparent from the record that the court developed its concerns after reviewing the state's response to the application to the Supreme Court of Ohio for the disqualification of the trial judge. In other words, the trial court became concerned that defense counsel had attempted to manipulate the court after the critical events had occurred, not contemporaneously with defense counsel's conduct.
 {¶ 24} Regardless of whether the contempt was direct or indirect, we find that Mayhall and Butz should have been afforded an evidentiary hearing because there was no "need for speed" to address the allegedly contemptuous conduct. This lack of urgency is amply illustrated in the record.
 {¶ 25} When the trial court initially informed counsel on May 12, 2006, that it had "very serious concerns about defense counsel and the manner in which they're operating in this courtroom," the court indicated that it would address its concerns at the conclusion of the trial. On May 15, 2006, defense counsel indicated that they were greatly concerned that they would be charged with contempt at the conclusion of trial, that they were intimidated, and that they believed their ability to represent Dean effectively would be affected by "this hanging over [their] head[s]." The court responded that it "simply told [them] on Friday that it would handle the matter at the conclusion of these proceedings" and it reiterated that "[w]e're not getting into this now because I *Page 9 
and it reiterated that "[w]e're not getting into this now because I told you we'd address that at the conclusion of the case."
 {¶ 26} On May 16, 2006, Dean expressed to the court his concerns that Mayhall and Butz could not effectively represent him. Defense counsel reiterated their feeling that the situation was having a "chilling effect on [their] ability to represent [their] client." The court responded that they would be held accountable if they engaged in unethical conduct. The court further stated: "I've told you three times that I'm not going to prejudge that. There's been accusations made that if I believe that they're founded, that it does mean that you engaged in unethical activity. It appears on the face of the allegations that there's facts that would corroborate the allegations so I have serious concerns about it. I'm not going to make a determination at this time because we're in the middle of a capital trial." The court reassured counsel, however, that they had "free reign and wide latitude to defend [their] client in an ethical manner."
 {¶ 27} On May 17, 2006, Dean again expressed concerns to the court about Mayhall's and Butz's continued representation. Dean "implored" the court to address the issue of his counsel's alleged unethical conduct "because I feel as though that is the only way that I will receive justice in this courtroom." The court explained possible options for addressing the misconduct issue — stay the trial until the issue is resolved, turn the issue over to another judge, or inform defense counsel that they would receive no punishment. The court rejected each of these possibilities and decided to proceed with the trial. The court ultimately addressed the issue on June 13, 2006.
 {¶ 28} In light of the trial court's repeated determinations that it need not give immediate attention to evaluating defense counsel's conduct, we find no basis for the court to resolve the *Page 10 
to resolve the matter in a summary fashion. Because there was no "need for speed," Mayhall and Butz were entitled to an evidentiary hearing on the contempt allegations.
 {¶ 29} Mayhall and Butz further assert that the trial court should have referred the fact-finding to another judge, because the court was "too embroiled in the controversy to act as a neutral and detached fact finder." The record supports defense counsel's assertion.
 {¶ 30} In his affidavit in support of his motion to withdraw as counsel, Mayhall stated that on May 12, 2006, he, Butz, and the prosecutors met with the court in chambers, during which the court informed defense counsel that the supreme court had dismissed the affidavit of prejudice. Mayhall indicated that the judge appeared to be "angry: his face was flushed and he was glaring at defense counsel." During the trial, the court repeatedly stated that it had "serious concerns" with defense counsel's behavior and told defense counsel that "you guys got yourself into this situation."
 {¶ 31} When Dean also expressed concern about whether Mayhall and Butz could adequately represent him, he indicated that the court appeared to "have taken this personally; and [that Mayhall and Butz] have offended you in some way, shape, or form. Whatever it is, I don't know. I'm not a lawyer myself. But I'm fairly telling you as an individual, I feel you're taking this personally; and it's impeding their ability to defend me properly. * * *"
 {¶ 32} Most significantly, statements from the trial court indicated that the court's impartiality was impaired. In responding to defense counsel's affidavit of disqualification, the trial court indicated that it felt compelled to respond to the affidavit "since it appears, in part, to be a personal attack on my integrity and competence as a Judge." Later, in its ruling on the contempt, the trial *Page 11 
ruling on the contempt, the trial court found that "defense counsel had a dual motive for having this Court removed from the case. * * * Their second motive stems from a longstanding personal revulsion of the Court, dating back to when this Judge was an assistant prosecuting attorney. Accordingly, the Court vehemently disagrees with Mr. Butz's statement that This is not a personal attack on the Court.'"
 {¶ 33} Although the trial court repeatedly stated that it would not prejudge the issue, the record supports defense counsel's assertion that the court was "too embroiled in the controversy to act as a neutral and detached fact finder" and that a different judge should have conducted an evidentiary hearing.
 {¶ 34} The second assignment of error is sustained.
 {¶ 35} I. "THE COURT BELOW ERRED WHEN IT FOUND DEFENSE COUNSEL IN CRIMINAL CONTEMPT OF COURT WHEN THE EVIDENCE WAS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE CONTEMPT BEYOND A REASONABLE DOUBT. IN THE ALTERNATIVE, THE FINDING OF CONTEMPT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} In their first assignment of error, Mayhall and Butz claim that there was insufficient evidence to support the contempt finding or, alternatively, the contempt was against the manifest weight of the evidence.
 {¶ 37} Given our disposition of the second assignment of error, we find it unnecessary to address the merits of this assignment, which we overrule as moot.
 {¶ 38} The judgment of the trial court will be reversed and the case will be remanded for the sole purpose of the trial court's ordering that Richard Mayhall and John Butz each be paid $2,000, these sums representing money that the trial court ordered deducted as fines from the *Page 12 
fines from the compensation due each for representing Jason Dean. The trial court shall order these payments within seven days of the file stamp date appearing on the final entry filed in this case.
GRADY, J. and DONOVAN, J., concur.
Copies mailed to:
William H. Lamb
Richard A. Cline
 Hon. Douglas M. Rastatter *Page 1