[Cite as *Preston v. Shutway*, 2013-Ohio-185.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

EDWARD L. PRESTON                    :

     Plaintiff-Appellee               :               C.A. CASE NO.    2012 CA 24

v.                                                     :               T.C. NO.    12CVSDV47

JOHN SHUTWAY                          :               (Civil appeal from
                                                                     Common Pleas Court)

     Defendant-Appellant          :

                                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___25th___ day of ___January___, 2013.

. . . . . . . . . .

EDWARD L. PRESTON, 1111Scioto Street, Urbana, Ohio 43078
     Plaintiff-Appellee

JOHN SHUTWAY, 573 E. Church Street, Urbana, Ohio 43078
     Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

     **{¶ 1}**  John Shutway, pro se, appeals from a judgment of the Champaign

County Court of Common Pleas, which denied Edward Preston's petition for a civil stalking

protection order, but fined Shutway $250 for failing to comply with a court order during the evidentiary hearing on the petition. For the following reasons, the trial court's summary imposition of the $250 fine against Shutway for contempt of court is reversed. In all other respects, the trial court's judgment will be affirmed.

I.

{¶ 2} The record reflects that Edward Preston and his wife, Karen, were involved in divorce proceedings, which were becoming acrimonious. On several occasions, John Shutway accompanied Karen Preston when she went to the marital property and, at Mrs. Preston's invitation, Shutway was present at a birthday party at Karen Preston's house for one of the Prestons' children.

{¶ 3} On May 16, Edward Preston filed a petition for a civil stalking protection order against Shutway. He alleged that, on May 15, Shutway took photographs with a cell phone from Karen Preston's van at the Prestons' marital property and continued to photograph events as Karen Preston and Shutway followed Preston from the marital property to Preston's attorney's office. The same day (May 16), after an ex parte hearing, the trial court issued a temporary civil stalking protection order against Shutway.[1]

{¶ 4} A full hearing on the petition was held on May 30, 2012. Preston testified on his own behalf. He described the incident on May 15, as well as Shutway's alleged behavior during the May 18 birthday party and allegations that Shutway made to the police after the birthday party that Preston had broken into Shutway's house and stolen Shutway's

---

[1] In a separate action, Preston also sought a civil stalking protection order against his wife. That action is not before us.

iPhone. Preston further testified that he believed Shutway had hidden the iPhone in Preston's truck in order to track Preston's whereabouts. Preston presented, as Exhibit 1, a photograph of Shutway and Karen Preston allegedly "sneaking through the back yard of the Lattimers [neighbors] over to the marital property" on May 19.

{¶ 5} Shutway also testified and provided an alternative version of what had occurred on May 15. He stated that he went with Karen Preston to the marital property for Mrs. Preston's protection. While there, the Prestons argued about Edward Preston's having changed the lock to the marital property; Karen Preston demanded a key and certain items from the property. Shutway testified that he and Karen Preston followed Preston to Preston's attorney's office because the Prestons agreed to go there to discuss their dispute. Shutway further testified that Preston came to the birthday party at Karen Preston's home without being invited, and Preston called the police to report Shutway's and Karen Preston's presence at the marital property. Shutway presented two photographs, Exhibits A and B. Exhibit A allegedly demonstrated "where Mr. Preston parked his vehicle obstructing the exit on the [marital] property" on May 15. Exhibit B "shows Mr. Preston at Mrs. Preston's house entering the house and then to the back yard" for the birthday party.[2]

{¶ 6} At the conclusion of the hearing, Shutway also attempted to offer his cell phone into evidence as Exhibit C to demonstrate that the phone did not have a camera. Shutway removed the SIM card (memory chip) from the cell phone and wanted to offer the

---

[2]On January 8, 2013, Shutway filed an affidavit with this Court in which he asserted additional "facts of case 2012CVSDV0047." In conducting our appellate review, we are limited to the record as it existed at the time the trial court rendered judgment. *E.g.*, *Fifth Third Bank v. Fin. S. Office Partners, Ltd.*, 2d Dist. Montgomery No. 23762, 2010-Ohio-5638. Accordingly, Shutway's affidavit will not be considered.

cell phone without it. The trial court told Shutway to "[p]ut it back in the phone. Put the whole thing back together and submit it as a piece of evidence." When Shutway refused to submit the SIM card with the cell phone, the following exchange occurred:

THE COURT: Sir, put it back in the phone.

MR. SHUTWAY: SIM card is mine.

THE COURT: Are you withdrawing the phone as evidence?

MR. SHUTWAY: No.

THE COURT: Then I need the whole phone, sir.

MR. SHUTWAY: No.

THE COURT: Sir, do you want to be found in contempt of court?

MR. SHUTWAY: Your Honor, the statute says that I may enter any piece of evidence I wish with or without a SIM card.

THE COURT: Oh, that's in the evidence rules that you can take the battery out of a phone? Do you want to tell me that? Do you want to tell me the law?

MR. SHUTWAY: I may submit anything I wish for evidence.

THE COURT: Put the whole thing together or don't submit it at all. That's your choice.

MR. SHUTWAY: This is what I wish to submit, Your Honor. Do you refuse it?

THE COURT: I'm not allowing it as evidence if you don't give me the whole thing. Your choice.

MR. SHUTWAY: This is what I wish to submit, Your Honor.  Do you accept it or not?

THE COURT: You have a question to answer, Mr. Shutway.

MR. SHUTWAY: This is what I wish to submit, Your Honor.   That is all.

THE COURT: Do you want to submit the phone as evidence?

MR. SHUTWAY: This is my phone (unintelligible).

THE COURT: That's not your phone.   There's no SIM card in it.

MR. SHUTWAY: It has a serial number.

THE COURT: I'm sorry?

MR. SHUTWAY: It has a serial number on it.  It is my phone.   And this serial number is what I wish to submit.

THE COURT: Put the SIM card in or I'm fining you $250.

MR. SHUTWAY: Fine.

THE COURT: You're fined –

MR. SHUTWAY: Thank you.

THE COURT: – and the exhibit, the Defense Exhibit C is not admitted into evidence.

{¶ 7}    At the conclusion of the hearing, the court took the matter under advisement and indicated that it would provide a written decision.  On June 11, prior to a written decision on the petition, Shutway filed a motion for the trial judge to recuse herself from the case and all other cases involving Preston.  He argued that the trial judge had a prior working relationship with Preston, who previously held the position of Clerk of Courts for the Champaign County Court of Common Pleas, and that the audio CD of the May 30

hearing demonstrated that the judge was biased against Shutway.

{¶ 8} The following day, June 12, the trial court issued a written judgment, concluding that there was "insufficient evidence for the issuance of Civil Stalking Protection Order." The court vacated its prior orders and dismissed the petition without prejudice. The judgment further stated, in part, "Respondent's Exhibit C was **not** admitted into evidence. Respondent is found to be in contempt of Court for refusing to follow the Court's order. Respondent is fined $250.00." (Emphasis in original.) On June 13, the trial court overruled the motion for recusal from this case as moot, and found that Shutway lacked standing to seek her recusal from other cases involving Preston.

{¶ 9} Shutway appeals from the trial court's June 12 judgment.

II.

{¶ 10} Shutway's notice of appeal indicates that he "specifically appeals the assessment of court fines to the Appellant." His appellate brief states that he "seeks relief from the fine imposed by the Judge and all costs associated with this appeal." He also raises four specific assignments of error, which state:

"As a matter of law, the attorney for the appellee and the appellee erred as they are required to prevent fictitious or malicious filings with the Court."

"As a matter of law, the Court committed plain error in issuing a temporary CPO where Judge Reisinger has a prior working relationship with the petitioner/appellee. The Judge is required to recuse sua sponte where the judge's impartiality might be reasonably questioned."

"The Court abused its discretion to denied [sic] the request to dismiss case 2012

CVSDV 0047 when it was determined the Appellee intentionally violated the protection order in case 2012 CVSDV 0046 [involving Karen Preston] two days after it was issued and dismissed the case during the hearing."

"As a matter of law, it is plain error for the Court to fail to admit exculpatory evidence of the Appellant and not to take judicial notice."

{¶ 11} As an initial matter, Shutway asserts that pro se litigants' submissions are "held to less stringent standards than submissions by lawyers" and that we should "go to particular pains to protect pro se litigants against consequences of technical errors if injustice would otherwise result." He cites several federal cases which he alleges support these assertions.

{¶ 12} To the contrary, "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants." *Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20; *see also Windsor v. Francis*, 2d Dist. Montgomery No. 24959, 2012-Ohio-4863, ¶ 5. A pro se litigant "cannot expect or demand special treatment from the judge, who is to sit as impartial arbiter." *Yocum* at ¶ 20, quoting *Kilroy v. B.H. Lakeshore Co.*,111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996).

{¶ 13} In his first assignment of error, Shutway claims that Preston lied in his affidavit in support of his petition for a civil stalking protection order and that Preston's attorney (who did not sign the petition or otherwise appear in this action) did nothing to alleviate the situation when the parties arrived at his office on May 15, 2012. Shutway's briefs asks that Preston and his attorney "be subjected to appropriate disciplinary action

under Civil Rule 11" and be required to pay Shutway's expenses. We see nothing in the record that could possibly invoke Civ.R. 11. Moreover, Shutway did not raise this issue in the trial court, and he cannot raise it for the first time on appeal. The first assignment of error is overruled.

{¶ 14} Shutway next claims that the trial court erred in issuing an ex parte temporary civil stalking protection order and in failing to dismiss Preston's petition at the May 30 hearing. Specifically, Shutway's second assignment of error asserts that the trial judge should have recused herself from all cases involving Preston due to an appearance of impartiality. In his third assignment of error, Shutway argues that the hearings involving Karen Preston and him should have been consolidated and that the trial court should have dismissed the petition against him at the hearing, as the court had done concerning the petition against Karen Preston earlier the same day. Shutway seeks "disciplinary action" against the trial judge for failing to rule in the same manner in both cases and for the 12-day delay in issuing a final judgment.

{¶ 15} Shutway's arguments fail for several reasons. First, the court's temporary ex parte protection order was not a final appealable order, *see* R.C. 2903.214(G), and the court's final judgment denied Preston's petition for a protection order. The ex parte civil stalking protection order was expressly vacated in the court's final judgment. The issuance of a final appealable order denying an order of protection superseded the ex parte order, rendering claims based on the ex parte order moot.

{¶ 16} Second, "[j]udicial bias is 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a

fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' Trial judges are 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.' " (Internal citations omitted.) *Weiner v. Kwait*, 2d Dist. Montgomery No. 19289, 2003-Ohio-3409, ¶ 89-90.

{¶ 17} The audio recording of the May 30 hearing reflects that the trial court spoke sharply with Shutway and appeared frustrated with Shutway's cross-examination of Preston. As discussed more fully below, the trial court also ordered Shutway to pay a $250 fine for contempt of court based on Shutway's refusal to return his SIM card to his cell phone after he removed it. However, the entire record, including the court's ultimate ruling in Shutway's favor on Preston's petition, belies a claim of judicial bias. And the fact that the trial judge and Preston knew each other from their past positions as an assistant prosecutor and clerk of courts, respectively, does not, alone, create an appearance of impartiality.

{¶ 18} Third, there is nothing in the record to suggest that any party asked the court to consolidate the hearings on Preston's petitions against Shutway and Karen Preston. Absent a motion explaining that the hearings would involve similar evidence, the trial court could not reasonably assume that the same evidence would be presented at both hearings. And as the record in Case No. 2012 CVSDV 0046 is not before us, it is not apparent that the trial court actually heard similar testimony in both cases. Accordingly, we cannot conclude that the court erred in holding separate hearings and resolving the cases differently.

{¶ 19} Finally, we summarily reject Shutway's suggestion that the trial court acted

unreasonably in issuing its written ruling within two weeks of the hearing on Preston's petition. Shutway's second and third assignments of error are overruled.

**{¶ 20}** Shutway's fourth assignment of error claims that the trial court erred in failing to admit his cell phone as evidence at the May 30 hearing. Shutway asserts that the court could have taken judicial notice of the evidence; he notes that the court, sua sponte, took judicial notice for Preston. Shutway further asserts that the trial court's ruling reflected judicial bias.

**{¶ 21}** Evidence is not admissible simply because a party has requested that it be admitted. Relevant evidence is generally admissible whereas irrelevant evidence is not. Evid.R. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, even relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 402; Evid.R. 403(A).

**{¶ 22}** Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 86; *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50. The trial court's decision not to admit evidence will be upheld absent an abuse of discretion and material prejudice. *State v. Wilson*, 2d Dist. Montgomery No. 20910, 2005-Ohio-6666, ¶ 48.

**{¶ 23}** Shutway offered his cell phone without the SIM card to refute Preston's

testimony that Shutway had taken photos of Preston with a cell phone. Shutway asserted that the cell phone he had on May 15 did not have a camera. The record was never developed as to whether the cell phone that Shutway had at the hearing was the same cell phone involved in the May 15 incident. Nor was there any discussion as to why the presence or absence of the SIM card was relevant, other than conclusory assertions by Shutway that the SIM card was not necessary, on the one hand, and the trial court's statement that the appellate court needed the entire phone, on the other.

{¶ 24} Regardless, Shutway was not prejudiced by the trial court's decision to exclude Shutway's cell phone. Even without the cell phone as evidence, the trial court concluded that there was insufficient evidence to support Preston's petition for a civil stalking protection order against Shutway. Accordingly, any possible error in the trial court's ruling was harmless.

{¶ 25} We note that the trial court could not have taken judicial notice of the fact that Shutway's phone lacked a camera. "Judicial notice can only be taken of a fact 'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' Evid.R. 201(B)." *In re S.N.*, 2011-Ohio-5983, 968 N.E.2d 1034, ¶ 23 (2d Dist.). Whether a particular model of cell phone has or does not have a camera (let alone a functioning camera) does not meet either criterion.

{¶ 26} In contrast, the trial court sua sponte took judicial notice of when Preston's petition was filed. A trial court is permitted to take judicial notice of the filings in the case

before it. *E.g.*, *Davenport v. Big Brothers & Big Sisters of the Greater Miami Valley, Inc.*, 2d Dist. Montgomery No. 23659, 2010-Ohio-2503, ¶ 24. Thus, the court properly took judicial notice that Preston's petition was filed on May 16, 2012. The court could readily determine that May 16, 2012 was a Wednesday by referencing a calendar, a source whose accuracy cannot reasonably be questioned.

{¶ 27} Shutway's fourth assignment of error is overruled.

{¶ 28} Finally, although not raised in a specific assignment of error, Shutway claims that the trial court erred in fining him $250 as a sanction for contempt of court.

{¶ 29} Common pleas courts have "both inherent and statutory power to punish contempts." *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992), citing *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984), syllabus. We review a trial court's contempt ruling for an abuse of discretion. *State v. Brandon*, 2d Dist. Greene No. 06 CA 137, 2008-Ohio-403, ¶ 6.

{¶ 30} "Contempt falls within two general categories – civil and criminal – based on the character and purpose of the sanction." *State v. Dean*, 2d Dist. Clark Nos. 2006 CA 61, 2006 CA 63, 2007-Ohio-1031, ¶ 15.

"Sanctions for criminal contempt are punitive in nature and unconditional." *State v. Montgomery*, Montgomery App. No. 20036, 2004-Ohio-1699, at ¶ 18. They are intended to punish the offender for past disobedience of a court order or other contemptuous conduct and to vindicate the authority of the court. *Id.* "Civil contempt sanctions, on the other hand, are remedial and are intended to coerce the contemnor into complying with the court's

order." *Id.* The punishment for civil contempt is conditional, and the contemnor has an opportunity to purge himself of the contempt and avoid the punishment by complying with the court's order. *Id.*

*Dean* at ¶ 15.

{¶ 31} Contempt is also classified as being either direct or indirect, and the distinction lies in where the conduct occurs. Direct contempt involves "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. "Direct contempt usually involves some misbehavior which takes place in the actual courtroom." *In re Purola*, 73 Ohio App.3d 306, 310, 596 N.E.2d 1140 (3d Dist.1991). In contrast, indirect contempt involves actions that occur outside the presence of the court, but demonstrate a lack of respect for the court or its lawful orders. *Brandon* at ¶ 7; *see* R.C. 2705.02.

{¶ 32} When Shutway attempted to offer his cell phone into evidence without the SIM card, the trial court told Shutway to put the SIM card back into his phone. The court stated that it would not accept the cell phone as evidence without the SIM card. Shutway repeatedly refused to submit the cell phone with the SIM card, and the trial court asked him if he "want[ed] to be found in contempt of court." Shutway again responded that he wanted to offer the cell phone without the SIM card and that he would be keeping the SIM card. Eventually, the court told Shutway, "Put the SIM card in or I'm fining you $250." Shutway did not comply. The trial court imposed a $250 fine and stated that the cell phone would not be admitted into evidence.

{¶ 33} The trial court initially used the threat of contempt as an attempt to coerce

Shutway into returning the SIM card to the cell phone. However, the court did not actually hold Shutway in contempt and impose the $250 fine until Shutway refused to comply with the court's ultimatum to put the SIM card in the cell phone or be held in contempt. Though the line between coercion and punishment can be murky, the trial court imposed the $250 fine at the May 30 hearing as punishment for Shutway's failure to comply with the court's order, not as another attempt to seek compliance. The trial court's June 12 judgment entry reflects that Shutway was "found to be in contempt of Court for refusing to follow the Court's order." Based on the circumstances, including that Shutway's offending conduct occurred in the courtroom in the presence of the judge, this case involves direct criminal contempt.

{¶ 34} "Whether and how a court may punish contempt depends in large part on whether the contempt is classified as 'direct' or as 'indirect.'" *In re Davis*, 77 Ohio App.3d 257, 263, 602 N.E.2d 270 (2d Dist.1991). With indirect contempt, the court must provide certain procedural safeguards, including a written charge, entry on the court's journal, an adversarial hearing, and an opportunity for legal representation. *Dean* at ¶ 18, citing *Xenia v. Billingham*, 2d Dist. Greene No. 97-CA-124, 1998 WL 698356 (Oct. 9, 1998); R.C. 2705.03. In contrast, a court may punish direct contempt summarily, and due process does not require that the contemnor be granted a hearing. *Dean* at ¶ 19; *State v. Kitchen*, 128 Ohio App.3d 335, 341, 714 N.E.2d 976 (2d Dist.1998); R.C. 2705.01.

{¶ 35} We have held, however, that the power to punish summarily is limited in two ways.

First, the locus of the contumacious act or acts must be such that the

determinative issues of the offense are known to the court personally. Under those circumstances, because the "external facts" of the contempt are known, no fact-finding determination is required and a summary proceeding is appropriate.

Second, the nature or quality of the contumacious act must be such that the orderly and effective conduct of the court's business requires its immediate suppression and punishment. *In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. The particular conduct must create "an open threat to the orderly procedure of the court" such that if "not instantly suppressed and punished, demoralization of the court's authority will follow." *Cooke v. United States* (1925), 267 U.S. 517, at 536, 45 S.Ct. 390, at 395, 69 L.Ed. 767, at 773. In authorizing exercise of the summary power to punish, the *Oliver* court "gave no encouragement to its expansion beyond the suppression and punishment of the court disrupting misconduct which alone justified its exercise." *Id.,* 333 U.S. at 274, 68 S.Ct. at 508, 92 L.Ed. at 695. Further, the limits of the contempt authority are, in general, "the least possible power adequate to the end proposed." *Id. * * *

It seems clear that under the rules of *Cooke* and *Oliver* a summary proceeding is not authorized simply because the conduct constitutes direct contempt. Even if the external facts are clear because they took place in the presence of the judge, the effect of the contumacious conduct must create a "need for speed" to immediately suppress the court-disrupting misbehavior

and restore order to the proceedings. Dobbs, [Contempt of Court: A Survey (1971)], 56 Cornell L.Rev. at 229. Absent that need, an evidentiary hearing is required even though the contempt is "direct."

*Davis*, 77 Ohio App.3d at 263-64.

**{¶ 36}** There is no doubt that Shutway repeatedly refused to offer his cell phone into evidence with the SIM card. However, Shutway's refusal to do so did not create "an open threat to the orderly procedure of the court" such that if "not instantly suppressed and punished, demoralization of the court's authority will follow." *Cooke*, 267 U.S. at 536. In refusing to return the SIM card to the cell phone, Shutway argued to the court that he was not required to offer his cell phone into evidence with the SIM card. The court's repeated orders to put the SIM card back into the cell phone reflected the court's opinion that the cell phone was not admissible without the SIM card. If Shutway was unwilling to offer his cell phone in a manner that was acceptable to the court, the trial court had the option of simply denying Shutway's request to admit his cell phone into evidence, which the trial court ultimately did. Indeed, once the court ruled on Shutway's request to admit his cell phone into evidence, the hearing proceeded in an orderly fashion. While Shutway's refusal to comply with the court's order to put the SIM card into the cell phone was disrespectful, his conduct did not rise to such a level that summary punishment was necessary to restore order to the court proceeding.

**{¶ 37}** We therefore conclude that the trial court erred in summarily imposing the $250 fine for contempt of court.

III.

{¶ 38} The trial court's summary imposition of the $250 fine against Shutway for contempt of court is reversed. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., concurring:

{¶ 39} I agree with the opinion and conclusions of the majority. I write separately with regard to the trial court's finding of the appellant to be in contempt.

{¶ 40} The incident in question surrounds the appellant's offering of his own cell phone into evidence after he removed the SIM card. The court ordered him to replace the SIM card or face the consequence that the phone would not be admitted. His phone was therefore excluded. "While Shutway's refusal to comply with the court's order to put the SIM card into the cell phone was disrespectful, his conduct did not rise to such a level that summary punishment was necessary to restore order to the court proceeding." ¶ 36 supra. Under the unique circumstances of this case, I agree.

{¶ 41} But, I would hope our conclusion in this case does not have a chilling effect on a trial court's obligation to take swift and decisive action when destruction of admissible evidence is at risk. If, for example, another party sought to introduce Shutway's phone into evidence, and Shutway proceeded to take out the SIM card, or disable it in some other way, I would likely approve of immediate action, including contempt, to prevent the destruction of that evidence.

. . . . . . . . . .

Copies mailed to:

Edward L. Preston
John Shutway
Hon. Lori L. Reisinger