[Cite as *Mundy v. Centrome, Inc.*, 2024-Ohio-3358.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| PAMELA DUFF MUNDY, ADMINISTRATOR OF THE ESTATE OF JAMES MELVIN DUFF, DECEASED, et al., | : : : | CASE NO. CA2023-01-012 |
| Appellees, | : : | O P I N I O N 9/3/2024 |
| - vs - | : : | |
| CENTROME, INC., dba ADVANCED BIOTECH, et al., | : : | |
| Appellants. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV90268


TorHoerman Law, LLC, and Jacob W. Plattenberger, Eric W. Cracken and Steven D. Davis, for appellees, Landreth, Humphries, and Mundy.

Robbins, Kelly Patterson & Tucker, and Jarrod M. Mohler, for appellee, Kyle Landreth.

Stites & Harbison PLLC, and Robin D. Miller, Cassandra L. Welch, Thad M. Barnes, and David B. Owsley, for appellant, Mane, Inc.

Bricker & Eckler LLP, and Anne Marie Sferra and Christopher P. Gordon, urging reversal for amicus curiae Ohio Manufacturers' Association.

**BYRNE, J.**

{¶ 1} Defendant-appellant, Mane, Inc., appeals from the "Amended Judgment Entry as to Claims of Pamela Duff Mundy, Josh Humphries and Kyle Landreth (Final Appealable Order)," which we will refer to as the "Judgment Entry." The Judgment Entry was entered by the Warren County Court of Common Pleas on a jury verdict holding Mane liable for employer-intentional-tort claims brought by three current or former employees: James Melvin Duff (whose estate is represented by Pamela Duff Mundy), Joshua Humphries, and Kyle Landreth. At the heart of this dispute is diacetyl, a flavoring chemical used in Mane's operations. The plaintiffs-appellees claimed that exposure to this substance at work caused them to develop lung disease. For the reasons set forth below, we sustain Mane's first assignment of error, dismiss the remaining assignments of error as not ripe for our review, vacate the Judgment Entry, and remand the case for a new trial solely on Mane's statute-of-limitations defense.

## I. Facts and Procedural History

{¶ 2} Mane is a flavor and fragrance manufacturer headquartered in France with locations around the world. The company manufactures flavors at facilities in Ohio. There, Mane produces artificial flavors like watermelon and strawberry, selling them to manufacturers for use in various products. For years, Mane used diacetyl, a hazardous chemical known to cause severe lung disease when inhaled, as an ingredient in many of its flavors. The company received pure diacetyl from distributors in barrels at its Milford, Ohio, facility. Workers mixed the diacetyl with other chemicals to create flavor mixtures. These mixtures were put in new barrels of flavored liquid and then sent to Mane's Lebanon, Ohio, facility. At the Lebanon facility, workers transformed these flavor mixtures into "microcaps," which are tiny, dried flavor pellets.

{¶ 3} On September 29, 2017, nine Mane employees who worked in the Lebanon

facility's microcaps area filed suit in the Warren County Court of Common Pleas, each claiming an employer intentional tort against Mane.[1] One of the employees, Duff, had died in February 2017 from a fentanyl overdose, so his estate brought the employer-intentional-tort claim for him and also brought a claim for wrongful death. The employees alleged that Mane had knowingly exposed them to dangerous levels of diacetyl and then deliberately misrepresented the risks of exposure. They alleged that inhaling diacetyl-laden fumes created in the microcaps creation process, as well as air known to have a high diacetyl concentration in another area of the facility that Mane sometimes required them to enter, caused them serious lung disease.

{¶ 4} The trial court severed the claims of Humphries, Landreth, and Duff's estate (whom we refer to collectively as "Plaintiffs," except where indicated) for purposes of discovery and trial.[2] Mane denied the allegations and raised a statute-of-limitations defense, arguing the employer-intentional-tort claims were time-barred under Ohio's two-year limit. Mane moved for summary judgment on all claims and its statute-of-limitations defense. The trial court denied Mane's summary-judgment motion.

{¶ 5} In August 2022, a two-week trial was held with respect to Plaintiff's claims. At trial, Plaintiffs presented documentary evidence and testimony that, they argued, proved that Mane had long been aware of diacetyl's dangers. They also argued that this evidence and testimony proved that Mane not only had failed to warn them or provide appropriate protective equipment but actively assured them of their safety—thus deliberately

---

1. Nine diacetyl distributors were also named as defendants: Centrome, Inc., d/b/a Advanced Biotech, Berje Inc., Elan Chemical Co., Inc., Vigon International, Inc., Charkit Chemical Corp., Alfrebro, LLC, Wild Flavors, Inc., Archer-Daniles-Midland Co., and O'Laughlin Industries, Inc. These distributors are not involved in this appeal.

2. The claims of the other six plaintiff employees are pending, and they are not parties to this appeal. We note too that a case filed in 2019 by two additional plaintiffs has been consolidated with this case. The claims of those two plaintiffs are also pending.

misrepresenting the dangers associated with their exposure to diacetyl. Mane presented documentary evidence and testimony that, it argued, proved that Mane took appropriate steps to protect employees from diacetyl, that it did not intend to injure Plaintiffs, and that it did not deliberately misrepresent diacetyl's dangers.

{¶ 6} The parties also presented testimony regarding Mane's two-year statute-of-limitations defense. Plaintiffs worked in the microcaps room between 2012 and 2015. In early 2015, Mane told employees about diacetyl and implemented various diacetyl-related safety procedures. Testimony suggested that, soon after these changes were made, Plaintiffs raised or noted concerns in various ways about their previous exposure to diacetyl. Company-hired physicians who examined Plaintiffs told them that they were in apparent good health and that their lung-function was normal. But later, a physician not associated with Mane, Dr. Charles Pue, diagnosed Plaintiffs with flavorings-related lung disease caused by diacetyl exposure at the Lebanon facility. Duff and Landreth received their diagnosis on September 29, 2015, and Humphries's diagnosis came a year later, on September 8, 2016. As mentioned earlier, Plaintiffs filed their complaint on September 29, 2017.

{¶ 7} At the close of evidence, Plaintiffs and Mane both filed motions for directed verdict. The trial court denied Mane's motion for directed verdict as to Plaintiffs' claims for employer intentional tort and wrongful death. But the court granted Plaintiffs' motion for directed verdict on Mane's statute-of-limitations defense. The court concluded that Mane failed to establish that Plaintiffs filed their action untimely because it had failed to present any evidence as to when Plaintiffs filed the action. Nevertheless, in a curious procedural maneuver, the trial court ordered that interrogatories be submitted to the jury on the statute-of-limitations issue solely for the purpose of appellate review.

{¶ 8} The jury largely sided with Plaintiffs. While rejecting the wrongful-death claim

brought by Duff's estate, it found for Plaintiffs on their employer-intentional-tort claims. The jury also found the tort claims timely—that Mane failed to establish that Plaintiffs had filed their action outside the statute-of-limitations period. The jury awarded Plaintiffs an aggregate $410,000 in non-economic compensatory damages, $4 million in punitive damages, and attorney fees.

{¶ 9} In the Judgment Entry, the trial court entered final judgment for Plaintiffs on liability and the jury's compensatory-damages verdict, addressed other issues regarding the jury's damages award, and denied Mane's motion for judgment notwithstanding the verdict or for a new trial.

{¶ 10} Mane appealed.

## II. Analysis

{¶ 11} Mane brings six assignments of error challenging various rulings by the trial court. These span from pretrial decisions on motions for summary judgment and motions in limine, through the court's handling of directed-verdict motions during trial, to post-trial rulings on damages and the statute of limitations. It is a broad net, seeking to overturn nearly every significant decision that went against Mane.

### A. The statute of limitations

{¶ 12} Mane's first assignment of error states:

> THE TRIAL COURT ERRED BY FAILING TO APPLY THE CORRECT LEGAL STANDARD TO MANE'S STATUTE OF LIMITATIONS DEFENSE AND BY GRANTING DIRECTED VERDICT TO PLAINTIFFS ON THAT DEFENSE.

{¶ 13} The first assignment of error concerns the trial court's handling of Mane's statute-of-limitations defense. This assignment of error presents two main issues: first, whether Plaintiffs' claims are time-barred as a matter of law by the two-year statute of limitations in R.C. 2305.10, and second, whether the trial court erred in granting a directed

verdict to Plaintiffs on Mane's statute-of-limitations defense. We review both questions de novo. *Briggs v. Franklin Pre-Release Ctr.*, 2014-Ohio-2477, ¶ 8 (12th Dist.) (de novo review of trial court's decision to grant a directed verdict); *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 4 (same); *Schmitz v. NCAA*, 2018-Ohio-4391, ¶ 11 ("Application of a statute of limitations presents a mixed question of law and fact; when a cause of action accrues is a question of fact, but in the absence of a factual issue, application of the limitations period is a question of law").

{¶ 14} The parties agree that the relevant statute of limitations is found in R.C. 2305.10. This statute requires that an action for bodily injury caused by exposure to a hazardous chemical be brought "within two years after the cause of action accrues." R.C. 2305.10(A). The statute further specifies that a cause of action accrues on the earlier of two dates: either "[1] the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or [2] . . . the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure." R.C. 2305.10(B)(1).

{¶ 15} After the close of evidence at trial, a significant issue arose concerning Mane's statute-of-limitations defense. Mane had failed to present any evidence as to when the complaint was filed—a crucial fact for establishing whether the action was time-barred. Plaintiffs moved for a directed verdict on the defense. Mane argued that the date-stamped complaint was part of the record and the court should take judicial notice of the date the complaint was filed. The trial court initially reserved judgment on the directed-verdict motion. The issue then resurfaced during discussions about jury instructions. Mane asked the court to take judicial notice of the complaint's filing date and to instruct the jury accordingly.

{¶ 16} At this juncture, the trial court refused to take judicial notice of the filing date.

It granted Plaintiffs' motion for a directed verdict on Mane's statute-of-limitations defense, reasoning that Mane had failed to meet its burden to prove that Plaintiffs had filed their action beyond the two-year limitations period. Yet the court, mindful of potential appellate review, took an unusual step. It decided to submit interrogatories to the jury on the statute-of-limitations defense—even after granting the directed verdict holding Mane had not proved the defense. The court's rationale was to "preserve that issue if the Court of Appeals says that I am wrong and that the jury should have considered that." This approach, the court explained, was designed to avoid a potential remand "for the sole purpose of empaneling a jury to determine the statute of limitations."

{¶ 17} Consequently, despite the directed verdict, the jury received instructions on the statute-of-limitations defense. These instructions outlined the two-year statute of limitations for bodily-injury claims and explained when such claims accrue in cases involving exposure to hazardous chemicals. The court further instructed the jury that Mane bore the burden of proving that the case was brought too late. Each plaintiff was the subject of a separate interrogatory asking, "Do you find that Mane has established by a preponderance of the evidence that [plaintiff] did not file his case within the Statute of Limitations." The jury answered "no" for each plaintiff.

{¶ 18} As Mane argues, a problem arises from the absence of evidence regarding the complaint's filing date. Without this crucial date, neither the trial court nor the jury could reasonably conclude that Plaintiffs' claims were untimely filed. This evidentiary gap created an insurmountable obstacle for Mane's statute-of-limitations defense. Given the evidence before the court, the directed verdict on the statute-of-limitations defense was, in this light, the only logical outcome. The subsequent submission of this issue to the jury, therefore, served no meaningful purpose.

{¶ 19} Evid.R. 201(D) provides that a trial court "shall" take judicial notice "if

requested by a party and supplied with the necessary information." In other words, as we have said, a court "must" take judicial notice in such a situation. *State v. Lahmann*, 2007-Ohio-1795, ¶ 27 (12th Dist.); *accord City of Columbus v. LaMarca*, 2015-Ohio-4467, ¶ 50 (10th Dist.) ("Judicial notice is mandatory when a party requests notice of an appropriate fact and provides the trial court with the necessary information"). Here, Mane requested that the trial court take judicial notice of the complaint filing date and pointed out that the date was a part of the court's docket. That Mane made this request after the close of the evidence is immaterial. Evid.R. 201(F) provides that "[j]udicial notice may be taken at any stage of the proceedings." We conclude that the trial court should have taken judicial notice of the complaint's filing date as required by Evid.R. 201(D), and erred in not doing so.

{¶ 20} A court's ability to take judicial notice of its own docket extends to the filing dates of documents in the case at hand. *Preston v. Shutway*, 2013-Ohio-185, ¶ 26 (2d Dist.); *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580, 1994-Ohio-442 ("It is axiomatic that a trial court may take judicial notice of its own docket"). The rationale for this rule is clear and compelling: "docket information, such as when a complaint was filed, is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Staadecker v. Emerald Health Network*, 1993 Ohio App. LEXIS 6010, *8-9 (8th Dist. Dec. 16, 1993). This aligns precisely with the criteria for judicial notice set forth in Evid.R. 201(B).

{¶ 21} Once a fact is judicially noticed, the trial court is obligated to "instruct the jury to accept as conclusive" that fact. Evid.R. 201(G). This requirement underscores the importance of judicial notice in ensuring that undisputed, readily verifiable facts are properly incorporated into the trial process.

{¶ 22} In failing to take judicial notice of the complaint's September 29, 2017 filing date—thus ignoring that date in its review of Plaintiffs' directed-verdict motion and

withholding that date from the jury in its consideration of the statute-of-limitations interrogatories—the trial court effectively foreclosed any meaningful consideration of Mane's statute-of-limitations defense, despite its potentially dispositive significance to the case. The trial court's failure to take judicial notice of the complaint's filing date was not merely a procedural misstep; it materially prejudiced Mane's defense.

{¶ 23} A directed verdict is appropriate only when, viewing the evidence most favorably to the non-moving party, reasonable minds can reach but one conclusion. Civ.R. 50(A)(4). Here, we conclude this standard was not met for Mane's statute-of-limitations defense. For this action to have been timely filed, the two-year limitations period needed to commence no earlier than September 29, 2015. The record, though, contains evidence from which a jury could reasonably conclude that it did commence earlier. That is, there is evidence that Plaintiffs possessed the requisite knowledge to trigger the statute of limitations *before* September 29, 2015, potentially rendering their action untimely.

{¶ 24} Mane points to evidence of actions or statements by Plaintiffs (e.g., statements to doctors, an incident report, a disability claim, a workers' compensation claim, and legal consultations) that, it asserts, prove that before September 29, 2015—the date on which the first formal medical diagnosis of flavorings-related lung disease was made—Plaintiffs knew Mane had exposed them to diacetyl and knew of their alleged resulting injuries. This evidence, Mane argues, supports finding that the statute of limitations was triggered under the "should have known" prong of R.C. 2305.10(B)(1) more than two years before Plaintiffs filed suit. Plaintiffs counter with the argument that before September 29, 2015, they had been assured by Mane-hired physicians of their good health and by Mane itself that their diacetyl exposure was negligible. They posit that it would be illogical to impute to them greater knowledge than their treating physicians possessed.

{¶ 25} This conflicting evidence creates a dispute of fact. While Plaintiffs might have

known about exposure and symptoms, they were also told that their exposure was harmless and that they were in good health. This evidentiary tension permits reasonable minds to differ on when the statute-of-limitations period was triggered, making it a quintessential jury question.

{¶ 26} We cannot, *as a matter of law*, pinpoint when the statute of limitations commenced. The evidence does not conclusively establish—again, as a matter of law— that Plaintiffs "should have known" no mention of the obligation to exercise diligence of an actionable injury more than two years before filing suit. Some evidence suggests they "should have known" *before* September 29, 2015, potentially rendering the action *untimely*. But there is also evidence suggesting Plaintiffs had no reason to know of an actionable injury *until* September 29, 2015, potentially rendering the action *timely*. We note too that the record does not reveal whether the jury found the statute of limitations commenced on September 29, 2015, as Plaintiffs maintain, or before that date, as Mane contends. This ambiguity underscores the prejudicial nature of the trial court's error in failing to take judicial notice of the complaint's filing date.

{¶ 27} We are mindful of the complexities involved in this case and the substantial time and resources invested in the original trial. We are reluctant to disturb a jury verdict unnecessarily. But our reluctance must yield to our obligation to ensure that fundamental legal principles, including the statute of limitations, are properly applied.

{¶ 28} We therefore sustain Mane's first assignment of error and remand for a new trial solely on Mane's statute-of-limitations defense. We will provide additional details regarding the steps that should be taken on remand at the end of this opinion.

## B. The Remaining Assignments of Error

{¶ 29} In its remaining assignments of error, Mane argues that the trial court erred in various ways during and after the trial. We address these assignments of error collectively.

{¶ 30} Mane's second assignment of error states:

> THE TRIAL COURT ERRED BY APPLYING PRE-TORT REFORM LEGAL STANDARDS TO PLAINTIFFS' INTENTIONAL TORT CLAIM.

{¶ 31} The second assignment of error concerns the trial court's application of legal standards to Plaintiffs' employer-intentional-tort claim under R.C. 2745.01. Specifically, Mane contends that the trial court relied on abrogated pre-tort-reform case law and, consequently, allowed evidence and arguments that are inconsistent with the current statutory framework for employer intentional torts. Mane further challenges the sufficiency of the evidence and the jury instructions.

{¶ 32} Mane's third assignment of error states:

> THE TRIAL COURT ERRED TO MANE'S PREJUDICE BY ALLOWING NONSCIENTIFIC TESTIMONY ON CAUSATION.

{¶ 33} The third assignment of error concerns the admission of expert testimony on causation from two of Plaintiffs' experts. Mane contends that these experts' opinions lacked scientific reliability and should have been excluded under Evid.R. 702.

{¶ 34} Mane's fourth assignment of error states:

> THE TRIAL COURT ERRED IN FAILING TO ENTER JUDGMENT IN MANE'S FAVOR FOR LACK OF COGNIZABLE INJURY.

{¶ 35} The fourth assignment of error challenges the sufficiency and manifest weight of the evidence as to the findings of cognizable injury.

{¶ 36} Mane's fifth assignment of error states:

> THE TRIAL COURT ERRED BY ALLOWING DAMAGE COMPUTATIONS AT CLOSING WITHOUT PRIOR DISCLOSURE OR EXPERT TESTIMONY, BY ALLOWING PUNITIVE DAMAGES, AND BY FAILING TO APPLY SET-OFFS.

{¶ 37} The fifth assignment of error presents a trio of challenges related to damages.

Mane contends that the trial court erred in: (1) permitting damage computations during closing arguments without prior disclosure or expert testimony; (2) failing to apply statutory setoffs for collateral-source and settlement payments as well as the punitive-damages cap; and (3) allowing punitive damages.

{¶ 38} Mane's sixth assignment of error states:

> THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL BASED ON COUNSEL'S IMPROPER AND ABUSIVE COMMENTS TOWARD WITNESSES AND OPPOSING COUNSEL, AND REPEATED REFERENCE TO PERSONAL BELIEFS.

{¶ 39} The sixth assignment of error concerns whether the trial court erred in denying Mane a new trial based on alleged misconduct by Plaintiffs' counsel.

{¶ 40} After much consideration, we conclude that we must decline to address the merits of these remaining five assignments of error at this time. We must do so because our resolution of Mane's first assignment of error renders these five assignments of error not ripe for judicial review. This is so because the new statute-of-limitations trial that will be conducted on remand could potentially render Mane's second through sixth assignments of error moot.

{¶ 41} The doctrine of ripeness is fundamental to the proper timing of judicial intervention. *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89, 1998-Ohio-366. Ripeness is "peculiarly a question of timing." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). The doctrine serves to prevent premature judicial entanglement in abstract policy disagreements. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). The principle of ripeness preserves judicial resources for "'problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.'" *Elyria Foundry* at 89, quoting Comment, *Mootness and Ripeness: The Postman Always Rings Twice*, 65 Colum.L.Rev. 867, 876 (1965). This reflects an

optimistic view that justiciable controversies will, in due course, find their day in court. But the time for judicial relief must be appropriate—neither too early nor too late. Ripeness focuses on whether a case is premature or not yet ready for judicial review. It deals with potential or anticipated harms that have not yet fully materialized—whether an asserted harm has matured sufficiently to warrant judicial intervention.

{¶ 42} The mootness doctrine ensures that courts address only live controversies where their judgments can have practical effect. As we have said, "It is a general rule of law that a court's function is to render judgment in actual controversies where judgments can be carried into effect." (Citation omitted.) *Richard J. Conie Co. v. Village Council of W. Jefferson*, 2023-Ohio-876, ¶ 31 (12th Dist.). Mootness concerns whether a case has become too late for judicial review because the issue is no longer "live" or the parties lack a legally cognizable interest in the outcome. It addresses situations where the controversy once existed but has since been resolved or no longer affects the parties—whether circumstances have changed so that the controversy is no longer active. Mootness can occur at any time during the litigation, even after initial filing.

{¶ 43} In sum, while both ripeness and mootness are concerned with the timing of judicial review, ripeness looks at whether a case is too early for court intervention, while mootness examines whether it is too late. Both doctrines serve to ensure that courts address actual, ongoing controversies rather than hypothetical or resolved disputes.

{¶ 44} In the case before us, our disposition of the first assignment of error has rendered the issues raised in Mane's remaining assignments of error not ripe for review. This is because a jury verdict in Mane's favor with respect to the statute-of-limitations defense would preclude any judgment in Plaintiffs' favor. This, in turn, would render Mane's second through sixth assignments of error moot. Because of our resolution of the first assignment of error, an actual controversy does not currently exist with respect to these five

assignments of error—not, at any rate, until a jury finds that Plaintiffs have brought their claims timely. Until then, the issues raised are not ripe for review, and any opinion we would issue on Mane's last five assignments of error would be merely advisory. *State v. Ndubueze*, 2024-Ohio-1415, ¶ 13 (12th Dist.) ("It is well settled that courts do not issue advisory opinions"). If a factfinder determines that Plaintiffs' claims are timely, the trial court will re-enter the final judgment from which Mane appealed. Mane may then appeal from the newly entered final judgment. At that time, the issues that it has raised in its second through sixth assignments of error likely will be ripe for our review.

{¶ 45} Because they present issues that are not ripe for our review, we dismiss Mane's second, third, fourth, fifth, and sixth assignments of error.

### III. Conclusion

{¶ 46} We vacate the entire final judgment set forth in the Judgment Entry and remand the case for a limited trial on Mane's statute-of-limitations defense. Here is what the trial court must do:

- The court must hold a trial solely on the issue of whether Plaintiffs' claims are barred by the statute of limitations in R.C. 2305.10. Presumably, Mane will seek to introduce evidence of the filing date of the complaint for statute-of-limitations purposes, but we provide no direction as to how Mane proves the defense.

- If the factfinder determines that the limitations period *did not* commence before September 29, 2015 (rendering Plaintiffs' claims timely), the court must enter a new final judgment for Plaintiffs. This new final judgment should contain the original terms of the Judgment Entry but with such modifications or additions, or both, as the trial court may determine are appropriate given

the development of the case by that time.[3]  The parties may then appeal.  If Mane appeals, it may bring the same or similar assignments of error as those in the second through sixth assignments of error in this appeal, as well as any other assignments of error that it determines are appropriate.

- If the factfinder determines that the limitations period *did* commence before September 29, 2015 (rendering Plaintiffs' claims untimely), the trial court must enter judgment for Mane as to liability and not award any damages.  The parties may then appeal and bring the assignments of error they determine are appropriate.

**{¶ 47}** This approach is grounded in well-established procedural principles.  A remanded case resumes at the point of error.  *Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 418 (1987).  Here, that is the grant of the directed verdict with respect to Mane's statute-of-limitations defense.  However, we require retrial *only* with respect to the statute-of-limitations defense.  That is, we do not remand for retrial of liability and other issues already addressed by the jury.  This decision to limit the scope of the remand is supported by App.R. 12(D) and Civ.R. 42(B), which authorize appellate courts to order retrials on specific issues that can be separately adjudicated without compromising the fairness of the proceedings.  *See Mast v. Doctor's Hosp. N.*, 46 Ohio St.2d 539, 541 (1976); *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 5 (1988).  *See also Joyce-Couch v. DeSilva*, 1993 Ohio App. LEXIS 6232, *4-6 (12th Dist. 1993) (remanding case for limited trial only on damages issues).

---

3. Without deciding any issues not before us, we provide the following example. If the factfinder determines that Plaintiffs *did not* possess the requisite knowledge to trigger the statute of limitations period under R.C. 2305.10 before September 29, 2015, the court would enter judgment in Plaintiffs' favor with respect to liability, compensatory damages, and other terms as outlined in the Judgment Entry. The court could also include judgment as to liability and damages on the claims of the other plaintiffs, if their trials are complete by that time, and could address the impact of those trials on Plaintiffs' punitive damages.

**{¶ 48}** In essence, we are treating Mane's statute-of-limitations defense and the question of liability as bifurcated issues under Civ.R. 42(B). While it is more common to adjudicate a statute-of-limitations defense before reaching the merits of a case, there is no strict requirement for this order. Our approach here serves the interests of judicial economy in this case by preserving the existing liability determination pending resolution of the statute-of-limitations issue.

**{¶ 49}** This tailored approach strikes a balance between preserving the jury's original verdict (subject to potential future appellate review) and ensuring that the critical statute-of-limitations question receives proper consideration. This approach allows for the resolution of this dispositive issue without requiring the trial court to conduct a new trial on matters that have been settled by the jury (again, subject to any potential future appellate review), thereby serving the interests of justice, judicial economy, and finality.

**{¶ 50}** Mane's first assignment of error is sustained, the remaining assignments of error are dismissed as not ripe for review, and the Judgment Entry is vacated. This case is remanded for a new trial solely as to Mane's statute-of-limitations defense.

PIPER, P.J., and M. POWELL, J., concur.